## The Supreme Court of the Independent Order of Foresters v. Hanna Erica Mutter.

1. APPELLATE COURT PRACTICE—*Verdict Manifestly Against the Weight of the Evidence.*—A verdict manifestly against the weight of the evidence will be reversed.

Trespass on the Case.—Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge presiding. Heard in this court at the March term, 1902. Reversed and remanded. Opinion filed January 26, 1903.

WILLIAM C. SCHAEFER and CLARK VARNUM, attorneys for appellant.

P. E. O'Neil, Moses H. Bloch and George K. Rudolf, attorneys for appellee.

Mr. Justice Adams delivered the opinion of the court.

This is an appeal from a judgment for $1,108.34 in favor of appellee and against appellant. October 21, 1897, the appellant issued a benefit certificate to Otto Mutter, appellee's husband, in and by which appellant, in compliance with certain conditions by said Otto Mutter, agreed to pay to his beneficiary, in the event of his death, the sum of $1,000. Appellee was designated as his beneficiary. October 8, 1899, Otto Mutter died. The cause, by agreement of the parties, was tried by the court, without a jury.

Appellant's contentions are: 1. That appellee was bound by the by-laws of the order to exhaust her remedy by appeal within the order before bringing her action. 2. That her action was barred because brought too late, in view of a limitation expressed in appellant's by-laws. 3. That Otto Mutter committed suicide. One of appellant's by-laws provides that, on the death of a beneficiary member of good standing, due proof of claim shall be sent to the supreme secretary, who, on receiving it, shall lay it before the supreme chief ranger. By other by-laws it is provided that contracts for benefits do not include assurance against self-destruction, sane or insane, and that any member who commits suicide within three years of his initiation shall forfeit all benefits, except the one-thirtieth of the amount of the mortuary benefit held by him and remaining unpaid.

The proof of claim in this case was rejected by the supreme chief ranger on the express ground that the deceased committed suicide, and the time of his death being within three years from the time of his initiation, $33.34, being the one-thirtieth of the sum assured, was tendered to appellee and by her refused. By appellant's by-laws appellee might have appealed from the decision of the supreme chief ranger to the executive council and from the executive council to the supreme court of the order. It is

520    APPELLATE COURTS OF ILLINOIS.

VOL. 105.] Sup. Court Independent Order of Foresters v. Mutter.

well settled in this state that she was not bound so to do, but that she might, notwithstanding appellant's by-laws, sue at law, the right asserted being a property right—a money demand and not involving merely a question of discipline.    People v. Order of Foresters, 162 Ill. 78, 83–4.

Appellant's counsel, in his argument, contends that the force of the decision cited "is nullified by the case of Waldeck Lodge v. Grand Lodge Knights of Pythias, 166 Ill. 71." We do not so understand the latter case. It was a case involving solely a question of discipline, and the court was careful to say : "We do not find that any legal rights are properly involved in this proceeding." Ib. 78.

Sub-section 2 of by-law 213 of appellant is as follows :

"All civil actions or other legal proceedings to be brought or instituted against the supreme court, or against any other court or branch of the supreme court, shall be brought or instituted within six months after notice of the final action of the supreme court in the matter has been served, in accordance with the provisions of sections forty-two, ninety-eight and one hundred and sixty-five of the constitution and laws of the order."

.Other by-laws are as follows :

"265.    (1) Upon the death of a member in 'good standing' in a court, the court deputy, or the chief ranger, or in their absence, the vice-chief ranger and recording secretary, shall call a special meeting of the court, at which meeting the proof of claim for mortuary benefit of the deceased member shall be presented to the court for investigation; provided, that if the court deputy or other officers of the court refuse or neglect to call such special meeting, the beneficiaries of the deceased member may appeal direct to the supreme chief ranger."

"2.    (1) The supreme court shall consist of not less than two hundred nor more than two hundred and ten active or voting members, exclusive of its honorary members."

"(2) The acting or voting members of the supreme court shall be composed of its officers and representatives from the high courts, who are members in 'good standing' in the order."

"264.    Sub-section 6 : Whenever a claim for mortuary benefit is rejected, notice thereof shall be sent by the

supreme secretary to the court of which the deceased was last a member, and also to the beneficiaries of the member, if their address be known to him."

The evidence shows that Otto Mutter was, at the time of his death, a member in good standing. Therefore, under sub-section 1 of section 265, quoted *supra*, the court deputy or supreme chief ranger, or in the absence of those officers, the vice-chief ranger should have called a special meeting of the court, and the court, when met in pursuance of such call, should have passed on the proof, as provided by sub-section 3 of section 265, and notice of the final action of the court, in case of rejection of the claim, should have been served on appellee by the supreme secretary. None of these things was done. Sub-section 2 of section 213, on which appellant's counsel relies, provides in terms that "actions * * * shall be brought or instituted within six months after notice of the final action of the supreme court." Obviously, when there has been no action of the supreme court, and, necessarily, no such notice, the limitation does not apply.

Sub-section 1 of section 258 of the by-laws is as follows : " Except as provided in sub-sections two and three of this section, the contracts for benefits undertaken by the supreme court do not include assurance against self-destruction or suicide, whether the member be sane or insane."

Sub-section 2 of the same section provides: " Any member of the order who commits suicide shall, *ipso facto*, void all his benefit certificates and, *ipso facto*, all benefits whatsoever," and further provides, in substance, that in case of suicide, the amount provided in sub-section 3 shall be paid. Sub-section 3 provides, in substance, that if a member commits suicide within three years from the date of his last initiation or re-instatement, one-thirtieth of the amount of his mortuary benefit shall be paid to his beneficiaries. The constitution and by-laws of the order are a part of the contract between appellant and the deceased. He expressly agreed to be bound by them. This is not controverted by appellee's counsel, whose sole contention as to the question of suicide is, that the deceased did not com-

522    APPELLATE COURTS OF ILLINOIS.

VOL. 105.] Sup. Court Independent Order of Foresters v. Mutter.

mit suicide. Whether he did or not, is a question of fact, depending for solution on the evidence. An inquest was held on the body of Otto Mutter the 9th and 10th days of October, 1899, in Lake county, Illinois, where he resided while living. The verdict of the coroner's jury is as follows:

" We, the undersigned jurors, sworn to inquire of the death of Otto Mutter, on oath, do find that he came to his death by shooting himself with a shotgun."

Then follow the signatures of the jurors.

Edwin J. Whiting testified that about October 8th or 9th, 1899, he started with his wife, little daughter and hired girl through the wood, to go nutting; and about 10:30 or 11 o'clock in the morning he saw Otto Mutter about seventy-five feet distant from him, the witness, sitting with his back against a stump, with his right foot bare; that he casually glanced toward Mutter and walked on; that he didn't see the gun at that time; couldn't see it; that he walked straight west, and when he had walked about half a block he heard a shot behind him from the east; that subsequently, on the same day, witness' brother told him that a man had killed himself, and about six hours after he had heard the shot he walked over to see whether Otto was the man and saw the body. He describes what he saw, substantially thus : The body was lying back against the stump; the upper part of the head was blown off, from the eyes, and was lying directly back on top of the stump; he was facing west, his right foot bare, and his left foot stretched out; some of his brains were on the stump; his hat was blown to pieces and the outside rim of it was hanging on the edge of the stump. The gun was grasped in his right hand, the stock of it on the ground between his feet, the barrel up and down his breast, the muzzle about to his neck; a couple of whisky bottles were about eight or ten feet to the northeast of him, and a pipe was lying by his side. " No one else was round there when I passed, or just before I heard the shot. I looked at the gun and found that the right barrel had been

discharged.   The left barrel was loaded and the hammer cocked."

Charles A. Whiting testified that he was at the place where Mutter was found dead, about 4:30 o'clock.   His testimony is substantially the same as that of E. J. Whiting, and in addition to testifying that Mutter's right foot was bare, he testified that his stocking and shoe were on his left foot, also that one of the whisky bottles was full and that he should judge a good drink was out of the other.

Andrew Rump testified that about 3:30 o'clock P. M., he was walking on the west side of the Northwestern railway track, and saw the body west of the track.   His evidence is corroborative of that of the Whitings, except that he says both of Mutter's feet were bare.   He says that the gun was a nice-looking, double-barrel, breech-loading shotgun.

Carl Peterson testified that he knew Otto Mutter for about three months; that they worked at the same place; that Otto drank from one dozen to two dozen bottles of beer daily, and that about the latter part of August he heard Otto complain that his wife was sick, that he could get no sleep at night, and that if she didn't get better he would blow his head off, because there was nothing but doctors.

John Speld, financial secretary of the subordinate lodge to which Otto Mutter belonged, testified that Mutter came to the lodge a meeting or two before his death, and that he acted in a peculiar way, as if he had been drinking, and that witness smelled whisky or drink on his breath; also that Mutter said to him that he was unhappy; that his wife was always sick, and he saw no improvement and was tired of it.   John Plantin corroborated Speld as to Mutter's appearance at the lodge.

Anna Ryan testified that she worked in Mutter's house in October, 1899, and that October 8th she saw him cleaning his gun before he left the house.

Appellee testified, in substance, that she and her husband lived happily together; that he often went hunting, and

even when working often took his gun with him; that the morning of October 8th he took his gun with him; that he kissed her good-bye, as he usually did when leaving, and said he would return by seven o'clock, if not sooner; that his credit was good, and he worked steadily, and that she didn't see him come home drunk.

Charles Peterson testified that he saw Mutter's gun at his, Mutter's, house, about three months before his death; that then it appeared to be all right; that in the summer next after his death, he again saw and examined the gun and found it in bad condition; that the hammers were more or less loose; that of the right barrel more so; that " the hammer would stay up all right, and anything touch it of course would go off without touching trigger."

Appellee testified that she got the gun from the coroner and that she took it to Peterson's house just as it came from the coroner.

Charles Whiting, who was a member of the coroner's jury, testified that the gun was examined by that jury; that it was opened by the foreman of the jury and the cartridges taken out; that each member of the jury looked at the gun, and each one pulled the triggers; that the triggers were pretty hard, and had to be pulled before the hammers would go down; that witness tried to push the hammers down without pulling the triggers; that the left barrel was loaded and the other empty, and that the gun was in good condition. The gun was not produced on the trial.

The foregoing was substantially all the evidence bearing on the question of suicide. The finding of the court necessarily included a finding that the deceased did not commit suicide. We think it unnecessary to discuss the evidence or comment on it. Our conclusion, after careful consideration, is that the finding of the court that Otto Mutter did not commit suicide, is manifestly against the weight of the evidence. Therefore the judgment will be reversed and the cause remanded.