## Chicago, Burlington & Quincy Railway Company v. Emma Hendricks.

1. CONTRACT—*what constitutes, as between member and fraternal benefit society.* The regulations of such society, together with the application for membership and the certificate of membership, constitute the contract and must be read and construed together.

2. FRATERNAL BENEFIT SOCIETY—*when regulations of, invalid.* A regulation of such an organization which precludes the personal representative of a deceased member from benefits unless releases of claim for damages against a railroad company are obtained from parties other than such personal representative, who receive no consideration therefor, is unreasonable and invalid.

3. FRATERNAL BENEFIT SOCIETY—*when amendments of regulations invalid.* Notwithstanding the power to amend the regulations is retained, amendments which are oppressive, vexatious, contrary to public policy or which manifestly are calculated to defeat or destroy the fundamental plan of benefits, are invalid.

4. FRATERNAL BENEFIT SOCIETY—*when regulation providing for submission of disputes for decision, invalid.* A regulation of a fraternal benefit society by which the beneficiary is compelled to submit the question of liability to such society for decision, is invalid, especially where the tribunal which would decide the dispute is composed of individuals having collateral and adverse interests.

Action in assumpsit. Appeal from the Circuit Court of Adams County; the Hon. ALBERT AKERS, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed March 20, 1906.

JOSEPH N. CARTER and MATTHEW F. CARROTT, for appellant; CHESTER M. DAWES, of counsel.

CARL E. EPLER, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpsit by appellee against appellant predicated upon a contract and certificate of membership issued by the Relief Department of the Chicago, Burlington & Quincy Railroad Company to Peter A. Hendricks and payable to appellee, his widow, as beneficiary. The Circuit Court overruled demurrers to certain of plaintiff's replications. The defendant elected to abide by its said replications and refused to plead further, whereupon the court assessed the plaintiff's damages at $777, and rendered judgment therefor upon the pleadings. To reverse such judgment this appeal is prayed.

The declaration, in brief, avers that Peter A. Hendricks, the plaintiff's husband, on May 17, 1890, was an employe of the C., B. & Q. Railroad Co. at Quincy, Illinois, and made his application for membership in its Relief Department, therein agreeing that $2.25 be retained from his wages per month to secure him the relief benefits granted by the regulations of said department, and providing that the death benefits should be payable to his wife, Emma Hendricks, the plaintiff, which application was approved, and he received from said department the benefit certificate in words and figures following, to-wit: .

"BURLINGTON VOLUNTARY RELIEF DEPARTMENT.

Certificate of membership in the Relief Fund. Original membership began May 17th, 1890.    No. 7120.

·OFFICE OF THE SUPERINTENDENT,
CHICAGO, ILL., December 1, 1890.

This certifies that Peter A. Hendricks, employed by the Chicago, Burlington & Quincy Railroad Company, is a member of the Relief Fund of that Company, and is entitled to the benefits provided by the regulations of the Relief Department for a member of the third class, with no additional death benefit of the first class.    R. D. 12.

C. H. WILLIAMS,
Assistant Superintendent of the Relief Department."

That the said Hendricks then and there and thereby became a member of said Relief Fund of said railroad company, and the said application and certificate thereby became and constituted a contract by and between said Hendricks and the said railroad company, according to its terms and said regulations of said Relief Department.

The declaration further avers that the death benefits so fixed to be paid on the death of such member were $750, that Peter A. Hendricks continued in the employ of the C., B. & Q. R. R. Co. until its railroad was taken over by the C., B. & Q. Ry. Co. in November, 1901, when he entered and remained in the employ of said railway company as a switchman in its yards at Quincy until his death; that said railway company took over and assumed, among others, the obligation of said relief contract, and retained $2.25 from his wages monthly, the whole amount so retained at his death being about $400; and that said Hendricks, while a member of said Relief Fund in good standing, was killed, on July 23, 1903, while uncoupling cars for defendant in its train yards at Quincy.

To the declaration four special pleas were interposed, a determination of the sufficiency of which will be decisive of the legal questions involved in this appeal.    Pleas one

and two aver that there were persons other than plaintiff, to-wit: Harold B. Hendricks and Clyde L. Hendricks, who might legally assert claims against said railway company arising from the death of said insured, and that plaintiff did not deliver, as a condition precedent to her being paid the benefits claimed, releases from such other persons, in conformity with certain regulations of the Relief Department, adopted November 20, 1901, which are set out in said pleas and are substantially as follows:

1. "The Relief Department is a department of the company's service in the executive charge of a superintendent, whose directions in carrying out its regulations are to be complied with, subject to the control of the president, except in such matters as are under the control of the Advisory Committee," * * * ..

2. "The object of the department is the establishment and management of a fund, to be known as the 'Relief Fund,' for the payment of definite amounts to employees contributing thereto, who are to be known as 'members of the Relief Fund,' when under the regulations they are entitled to such payment by reason of accident or sickness, or, in the event of their death, to the relatives or other beneficiaries designated by them with the approval of the Superintendent."

3. "The Relief Fund will consist of voluntary contributions from members thereof, income derived from investments and from interest paid by the company, and appropriations by the company when necessary to make up deficiencies."

4. "The Company shall have general charge of the Department, guarantee the fulfillment of its obligations, take charge of all moneys belonging to the Relief Fund and be responsible for their safe keeping, pay into the fund interest at the rate of four per cent. per annum on monthly balances in its hands, supply the necessary facilities for conducting the business of the department and pay all the operating expenses thereof."

5. "There shall be an Advisory Committee constituted as follows: The General Manager of the Chicago, Burlington & Quincy Railroad shall be ex-officio a member and chair-

man of the committee. The other members of the committee shall be chosen annually,  *  *  *  as follows: One-half shall be chosen by the Board of Directors, and one-half by the employees, members of the Relief Fund, from among themselves."  *  *  *

9. "The Superintendent shall have charge of all business pertaining to the department. He shall  *  *  * sign all orders for the payment of benefits, furnish to the Committee such reports as they may require, decide all questions properly referred to him, and exercise such other authority as may be conferred upon him by the President or the Committee."

13. "The moneys received for the Relief Fund shall be held by the Company in trust for the department. The Committee shall direct the investment and any changes therein of money which is not required for immediate use. The Company being the trustee and guarantor of the Relief Fund, the investments shall be in such securities as shall have been approved by the Board of Directors, and shall be in the name of the Company, in trust for the Relief Department."

14. "If during any period of three years,  *  *  * the amount contributed by the members of the Relief Fund and received from other sources, including any unexpended balance not otherwise appropriated, shall not be sufficient to pay the benefits as they become due, the Company shall advance the amount necessary for this purpose reimbursing itself, if the income within the period will allow, and if at the end of any such period there shall still be a deficiency, as shown by the Treasurer's books, the Company, having advanced the money necessary to pay the deficiency, as above provided, shall assume the same and cancel the liability of the Relief Fund. But if at the end of any such period there shall be a surplus after making due allowance for liabilities incurred and not paid such surplus shall not be used to make up any deficiency in any previous period, but shall be used for the sole benefit of members of the Relief Fund in payment of benefits as provided in the regulations unless otherwise determined by a vote of two-thirds of the committee and approved by the board of directors. Death benefit, together with any unpaid disability benefits, shall be payable to the beneficiary of a deceased member upon proof of claim

and execution and delivery of the necessary releases in conformity with Regulation 64."

64. "In case of injury to a member he may elect to accept the benefits in pursuance of these regulations, or to prosecute such claims as he may have at law against the company or any company associated therewith in the administration of their relief departments. The acceptance by the member of benefits for injury shall operate as a release and satisfaction of all claims against the company and all other companies associated therewith as aforesaid, for damages arising from or growing out of such injury; and further, in the event of the death of a member no part of the death benefit or unpaid disability benefit shall be due or payable unless and until good and sufficient releases shall be delivered to the superintendent of all claims against the Relief Department, as well as against the company and all other companies associated therewith as aforesaid, arising from, or growing out of, the death of the member, said releases having been duly executed by all who might legally assert such claims; and further, if any suit shall be brought against the company or any other company associated therewith as aforesaid for damages arising from or growing out of injury or death occurring to a member, the benefits otherwise payable and all obligations of the Relief Department and of the company created by the membership of such member in the Relief Fund shall thereupon be forfeited without any declaration or other act by the Relief Department of the company; but the superintendent may, in his discretion, waive such forfeiture upon condition that all pending suits shall first be dismissed. The payment by the company, or any company associated therewith as aforesaid, of any amount in compromise of a claim for damages arising from or growing out of an injury to, or the death of, a member shall preclude any and all claims for benefits from the Relief Fund arising from or growing out of such injury or death."

The second and fifth pleas also set out the application of the deceased for membership, which contains the following provisions:

"I, Peter A. Hendricks, of Quincy, in the County of Adams, State of Illinois, now employed by the Chicago, Burlington & Quincy Railroad Company, as switchman, on the C., B. & Q. R. R., do hereby apply for membership in the Relief Fund of said company, and consent and agree to be bound by the regulations of the Relief Department of said company, which regulations I have read or have had read to me, and by any other regulations of said department hereafter adopted and in force during my membership, and by any agreement now, or hereafter made by said company with any other corporation or corporations now or hereafter associated with it in the administration of their Relief Department."

Following which is an agreement that the company shall apply as a voluntary contribution from the wages of applicant the sums mentioned in the declaration to secure the benefits provided for; and that in case of death, the death benefit shall be payable to his wife, Emma Hendricks, "or to such other person or persons as I shall subsequently designate in writing, in substitution therefor." And also the following clause:

"I also agree, that, in consideration of the amounts paid and to be paid by said company for the maintenance of the Relief Department, the acceptance of benefits from the said Relief Fund for injury or death shall operate as a release and satisfaction of all claims for damages against said company, arising from such injury or death, which could be made by me or my legal representatives."

First. By her replications to said pleas, appellee avers that on February 10, 1904, she exercised the option conferred upon her by the relief contract, and offered and still offers to the superintendent of the Relief Department, to execute and deliver her individual release of the Relief Department and the defendant for said benefits, as well as an additional release by her as administratrix for all damages that might be claimed by her individually by reason of the death of her husband; that said superintendent refused to

accept the said releases so offered as sufficient, but further required that she also execute a release as such administratrix in full satisfaction and discharge of all claims or causes of action which she, as such administratrix, had or might have against the defendant on account of the death of her intestate; that she refused to execute said last mentioned release upon the ground that the regulations requiring the same were unreasonable, and that she, as such administratrix, had no right or power and could not be required to release any right of action of said children and next of kin.

A contract similar to that here involved was under consideration in Eickman v. C., B. & Q. R. R. Co., 169 Ill., 312. . It was there contended that such contract was against public policy and void for the reason that defendant could not by a contract in advance exempt itself from liability to its employees for its gross negligence. In reply to such contention the court said:

"The substantial feature of the contract which distinguishes it from those held void as against public policy is that the party retains whatever right of action he may have had until after knowledge of all the facts and an opportunity to make his choice between the sure benefits of the association or the chances of litigation." It was held that the plaintiff having accepted the benefits of the association could not be justly entitled to assert as well his right of action for damages.

In Maney v. C., B. & Q. R. R. Co., 49 Ill. App., 105, an employee was a member of appellant's Relief Department and under his contract his widow was, as here, named as beneficiary. Upon his death, through accident, the widow accepted the benefits, and then as administratrix brought suit for damages in behalf of his children as next of kin. This court there held that the father's contract did not affect the rights of his children, but those of the widow only, and that the widow was not barred from prosecuting her action as administratrix. The contract there under consideration was similar to that here involved except that it embodied no regulation providing that releases should be delivered of all

claims growing out of the death of the member executed by all who might legally assert such claims, such regulation, as it exists at present, having been subsequent to the termination of the Maney suit.  Many cases have been cited by counsel for appellant wherein relief contracts have been held valid by courts of last resort.  C., B. & Q. R. R. Co. v. Olson, (Neb.), 97 N. W. 831; Id. v. Curtis, 51 Neb. 442; Maine v. C., B. & Q. R. R. Co., 109 Iowa, 260; Clinton v. C., B. & Q. R. R. Co., 60 Neb., 692; Oyster v. Burl. Relief Dept. (Neb.), 91 N. W., 699; P. R. Co. v. Cox, 55 Ohio St., 497. The question usually arose where a second remedy was sought, the courts in each instance holding that acceptance of relief benefits barred the member or beneficiary accepting the same from suing for damages for same injury, or being paid a judgment for damages for same, barred the party so accepting from suing for such benefits.  All of such cases seem to turn substantially on the principle of the election of remedies, of which right it is manifest appellee would be deprived by the construction sought by appellant to be placed upon the term of regulation 64, above quoted.

The regulations of the association together with the application of the deceased for membership, and the certificate of membership, constituted the contract between the deceased and the association, and must be read and construed together.  Life Ass'n v. Kentner, 188 Ill.. 431.  The effect of regulation 64 was to require appellee, as a condition precedent to her being paid the benefit claimed, to procure and deliver to the association, in addition to her individual release, releases from others, who were strangers to the contract, and to whom no consideration moved for such releases. While it is true that appellee as administratrix, if acting in good faith, had power to release or settle the right of action conferred upon her by statute for her benefit and that of the next of kin, without the consent of such next of kin, and this without the permission of the probate court, and that such settlement would be conclusive and binding as between administrator and appellant, it is also true that if she did so settle or release such cause of action, wrongfully, she could

and possibly would be called to account by the next of kin.
Henchey v. Chicago, 41 Ill., 136; Washington v. R. Co.,
136 Ill., 491; Perry v. Carmichael, 95 Ill., 519; Mattoon
Gas Co. v. Dolan, 105 Ill. App., 1. That a release by her of
her right of action as administratrix against appellant, with-
out the consent of the next of kin, upon no other consideration
than the payment to her of the benefit claimed, would be in
bad faith and deprive them of their legal rights without com-
pensation, is too clear to require discussion. The regu-
lation in question imposed upon the beneficiary a con-
dition precedent impossible of performance for obvious rea-
sons and was clearly destructive of the right of the benefi-
ciary to elect whether she would accept the benefit from the
association or prosecute her right of action against appellant.
We are further of opinion that said regulation is unreason-
able and void for the following additional reasons: By the
terms of his original application the deceased agreed that the
acceptance of benefits should operate as a release and satis-
faction of all claims for damages which could be made by
him or his legal representatives. This clause has been con-
strued by the Supreme Court of Nebraska in the case of
C., B. & Q. R. R. Co. v. Wymore, 40 Neb., 645, where it
was held that the widow had thereunder an option to accept
the death benefit; that her acceptance released her cause of
action against the company but that neither the membership
of the insured nor his contract nor the acceptance of the
widow released her cause of action as administratrix as to
the children. To the same effect are C., B. & Q. R. R. Co.
v. Bell, 44 Neb., 44, and other cases cited by appellee. If
the rule thus laid down be the law, and we are inclined to
hold that it is, appellee's right of recovery can only be de-
feated by reason of the restrictive clauses in the regulation
under consideration, which it will be seen was adopted after
the making of the original contract as represented by the ap-
plication and certificate of membership. We regard it as
well settled that although the contract of membership pro-
vides that such contract is subject to by-laws or amendments,
which may thereafter be adopted, such by-laws or amend-

ments, must, when adopted, be reasonable, not oppressive or vexatious, nor contrary to public policy. They must be such as are authorized by the nature and character of the association not manifestly detrimental to its interests. Any additional by-law or amendment which entirely changes the scheme of insurance and makes a radical departure from the fundamental plan, is not a reasonable exercise of the reserve power of amendment. If such by-law is calculated to defeat or destroy the fundamental plan, or substitute for it some other and essentially different scheme, its adoption and enforcement would be an abuse of the power conferred, a violation of the contract, and therefore unreasonable and invalid.

If this regulation is susceptible of the construction contended for by appellant, its adoption was clearly a radical departure from the fundamental plan evidently contemplated by the regulations of the association. The object is therein stated to be "the establishment and management of a fund * * * for the payment of definite amounts to employees when under the regulations they are entitled to such payment by reason of accident or sickness, or, in the event of their death, to the relatives or other beneficiaries designated by them * * *." In view of the undertaking by appellant to guaranty the obligation of the association, handle and invest its funds, supply the facilities for conducting its business, pay all expenses thereof, and to cancel any liability of the association to it for any deficiency, the provision that a member or beneficiary shall be required to elect whether he or she will elect to accept the benefit, or to prosecute a right of action in the event of injury or death, if occasioned by the alleged negligence of appellant, has been properly held to be not unreasonable, nor contrary to the fundamental, purposes of the association. The effect of the regulation is, we think, to enable appellant to relieve itself of liability to its employees, who may be members of the association, for damages resulting from its actual or alleged negligence in the operation of its railroad, more readily and at less expense than it could otherwise. By it, in case of death of the member, the services of the beneficiary are actively enlisted to pro-

cure the release of claims of others, many of which are just
and which might otherwise be recovered by suit or com-
promise.  The association would thus be diverted from its
manifest original objects and purposes and converted to a
large degree from a relief department into a branch of the
claim department of the appellant railroad company.  The
benefits to be derived by appellant from such an association
would be so great as to render the word "relief" in this con-
nection a misnomer.  The contract as originally entered into
by the insured provided for the payment of the benefit to ap-
pellee and her only.  Nothing would or could become due
under it to the next of kin, upon whom, as well as appellee,
the statute confers a right of action.  The regulation in ques-
tion, if construed as contended by appellant, imposes upon a
widow with children, as in this case, a burden which was
manifestly not contemplated by the original contract, and
frequently impossible of performance, that of procuring re-
leases from persons to whom nothing is due under such con-
tract.  Its effect is to defeat largely the purposes and objects
of the original contract and of the association itself.

Appellant relies chiefly upon the cases of Fuller v. B. &
O. Relief Ass'n, 67 Md., 433; Owens v. B. & O. R. Co.,
35 Fed. 715; State v. B. & O. R. Co., 36 Fed., 655;
Donald v. C. B. & Q. R. Co., 33 Iowa, 284; Johnson v.
R. Co., 163 Pa. St., 127, as sustaining the validity of its
construction of the regulations.  Lack of time and space pro-
hibits an analysis or discussion of such cases.  It will suffice
to say that if the views there announced can be said to be
in conflict with those herein expressed we are not prepared to
follow them.  We are therefore of opinion that, if suscepti-
ble of the construction sought to be placed upon it by ap-
pellant, regulation 64 is unreasonable and void in so far as
it deprives appellee of the right to an election as stated.

Second.  Pleas 3 and 4 set out the following agreement
contained in the application made by the deceased for mem-
bership, viz. :

"I also agree for myself and those claiming through me,
to be especially bound, by regulation numbered 64, provid-

ing for final and conclusive settlements of all disputes by reference to the superintendent of the Relief Department and on appeal from his decision to the Advisory Committee."

and then aver that plaintiff failed to submit her claim or the question regarding the liability of the defendant to pay the same, to the superintendent of the Relief Department, nor take any appeal of the same to the Advisory Committee as provided by regulation 66 which is as follows, viz.:

66. "All questions or controversies of whatsoever character arising in any manner, or between any parties or persons in connection with the Relief Department or the operation thereof, whether as to any claim for benefits preferred by any member or his legal representative or his beneficiary, or any other person, or whether as to the construction of language or meaning of the Regulations, or as to any writing, decision, instruction or acts in connection with the operation of the Department, shall be submitted to the determination of the superintendent, whose decision shall be final and conclusive thereof, unless an appeal from such decision shall be taken to the committee within thirty days after notice of such decision to the parties interested. When an appeal is taken to the committee it shall be heard by said committee without further notice at their next stated meeting, or at any such future meeting or time they may designate, and shall be determined by vote of the majority of a quorum, or of any other number not less than a quorum of the members present at such meeting, and the decision arrived at thereon by the committee shall be final and conclusive upon all parties without exception or appeal."

The replications to said pleas allege that plaintiff was not bound to comply with the requirements of said regulations for the reason that requirements of said regulation 66 are unreasonable, against public policy, unlawful and void.

Appellant contends that in associations of this character the member may make a valid agreement to exhaust his remedy within the association itself before appealing to the courts, and cites a number of authorities to support such proposition. On the other hand appellee insists that regula-

tion 66 can be applied, if at all, to matters concerning the discipline, regulation and disposition of the Relief Fund only, and does not apply whether the question is as to whether benefits are due to a beneficiary. We are of opinion that the latter contention is well-founded. As is said in People v. Order of Foresters, 162 Ill., 78: "There is a clear distinction between the obligation to appeal from lower to higher tribunals of the society itself resting upon one who presents a question of discipline, and such obligation so far as it concerns one who asserts a claim to money due upon a contract. Where the controversy is concerning the discipline or policy or doctrine of the order or fraternity, the member must resort to the method of procedure prescribed by the association including the remedy by appeal, before invoking the power of the courts. But it is otherwise, where a member claims money due from the society on its contract of insurance; in such case, the right to resort to the courts to coerce payment will not be abridged by the right of appeal from a lower to a higher tribunal of the society as conferred by its laws and rules. 'Courts of justice are freely open to those who seek money due them upon a contract.' "

While it is true that parties may make valid and binding agreements to submit questions in dispute to the arbitrament of persons or tribunals other than regularly organized courts, and where members of an association are bound where the by-laws so provide, to first submit matters in dispute between themselves, whether relating to membership or property rights, to a tribunal provided by the by-laws, before resorting to the courts (Pacaud v. White, 218 Ill., 138), we cannot recognize the doctrine that where, as in this case, the dispute is whether a beneficiary is entitled to recover money from the association, that is between a member and the association itself, such beneficiary can be compelled to submit the questions in dispute to the arbitrament of the association, especially where, as in the present case, the tribunal is mainly composed of the officers of the railroad company. Appellant would thus be made the judge in its own

38

cause. Grand Lodge v. Orrell, 97 App., 246. We regard the regulation, if the construction contended for be the proper one, as so unreasonable as to render the same incapable of being enforced for the purposes here sought. If, however, such regulation can be said to require appellee before bringing suit to pursue the remedy thereby provided, the requirement is one which appellant may and has waived by refusing absolutely to pay the claim. Supreme Lodge v. Zerulla, 99 App., 630, and cases there cited.

We are of the opinion that appellee could not be barred of her right of action by reason of anything contained in appellant's pleas.

The judgment of the Circuit Court is affirmed.

*Affirmed.*