# CASES

## FIRST DISTRICT

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1910.

---

**Johanna Timmerhoff, Plaintiff in Error, v. The Supreme Tent of the Knights of the Maccabees of the World, Defendant in Error.**

### Gen. No. 14,926.

1. CONTRACTS—*what essential to establish invalidity.* The right to contract is not derived from the government or from the law but is inherent. No contract is to be presumed as unlawful unless there be some statutory provision or principle of the common law inhibiting the same.

2. CONTRACTS—*when fairness cannot be questioned at law.* The fairness of a contract made between parties competent to contract is not a subject of inquiry in an action at law where no fraud or overreaching is claimed.

3. FRATERNAL BENEFIT SOCIETIES—*what by-laws prescribing conditions precedent to resort to courts valid.* By-laws of a fraternal benefit society which form a part of the contract with a member are valid which provide as conditions precedent to the resort to the courts, the submission of certain *ex parte* proofs and the presentation of claims against benefit funds to certain tribunals of the order.

4. FRATERNAL BENEFIT SOCIETIES—*validity of by-laws fixing time for suit.* A by-law of a fraternal benefit society forming a part of the contract with a member fixing the time within which suit must be brought, is valid.

5. FRATERNAL BENEFIT SOCIETIES—*what not commencement of suit within time fixed by by-law.* If a suit brought within the time fixed by by-law of the society is dismissed, a new suit brought after the lapse of such time, is not a compliance with such by-law.

6. TRIBUNAL—*meaning of term.* The use of the term "Tribunal" implies in the body concerning which it is used the possession of

power of decision of adjudicative effectiveness and the power of adjudication is a governmental power—an exercise of the sovereign power of the State.

7. ESTOPPEL—*effect of the decision of a non-judicial agency.* The most conclusive effectiveness that can result from a submission of a claim or controversy to a non-judicial body or agency is an estoppel *in pais.*

Assumpsit. Error to the Circuit Court of Cook county; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed April 8, 1910.

**Statement by the Court.** Plaintiff's deceased husband was, in his lifetime, a member of the defendant fraternal benefit association. A benefit certificate was issued to him when he became such member, on November 20, 1900, whereby the association agreed, upon his death, to pay to plaintiff one assessment to be levied on the defendant's membership, not to exceed in amount $2,000. The husband, Kasper Timmerhoff, died on November 8, 1901. The defendant refused to make any payment and plaintiff brought this suit on July 7, 1904, which resulted in the judgment against the plaintiff now before this court for review.

A declaration was filed consisting of one special count and the common counts. To this declaration defendant filed three pleas, namely, the general issue, plea of a contract limitation requiring suit to be brought within one year after final denial of the plaintiff's claim and a plea that Kasper Timmerhoff committed suicide which, under the contract, absolved defendant from liability to pay anything upon his death.

Plaintiff filed a similiter to the plea of general issue, obtained leave to and did reply double to the second plea by filing three replications, and denied that Timmerhoff committed suicide, as averred in the third plea, and put herself upon the country thereupon. Defendant then withdrew its first and third pleas and filed a general demurrer to plaintiff's three replications to the second plea. These demurrers were sustained by the

court and plaintiff electing to stand by her replications the court rendered judgment against her and she now prosecutes this writ of error to reverse that judgment.

ALBERT J. W. APPELL and W. S. JOHNSON, for plaintiff in error.

H. H. C. MILLER and W. S. OPPENHEIM, for defendant in error.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

The Circuit Court having disposed of the case by sustaining the demurrers to the plaintiff's replications to the second plea, nothing is before us except the question of the sufficiency in law of the matters presented by those replications.

The second plea of the defendant, to which these replications are addressed, is, in substance, that plaintiff is not entitled to recover anything because when Kasper Timmerhoff became a member of defendant association, November 19, 1900, he agreed that the laws of defendant should constitute part of the contract between defendant and himself; that among those laws there were two sections, namely, 485 and 496, as these sections are later herein set forth; that plaintiff's claim was submitted to the Board of Trustees mentioned in section 485 and that that Board examined, rejected and denied the claim on January 24, 1902; that immediately upon such rejection and denial the Board notified plaintiff thereof and no appeal was taken to the Court of Appeals mentioned in section 485; consequently, the decision of the Board of Trustees was a final denial of the claim; and that plaintiff did not institute her suit within one year next after the final denial of her claim by defendant association.

Plaintiff's first replication to the second plea is that plaintiff ought not to be barred from recovery because

she says that the provisions of said sections 485 and 486 are unreasonable, against public policy, unlawful and void.

Her second replication is that she ought not to be barred because, on January 31, 1902, within a year of the rejection of her claim, she instituted a suit upon her claim in the Superior Court of Cook county. The suit this replication sets up was dismissed, in her absence, upon motion of the defendant, on April 8, 1904.

The substance of her third replication is that, by reason of anything contained in said section 496, she was not required to bring suit to enforce collection of her claim until she had submitted her claim to the "various" tribunals of defendant and these tribunals had rejected her claim; that the various tribunals of the defendant referred to in said section 496 were as designated and provided for in defendant's by-laws in other sections, which other sections are hereafter set forth; that her claim was submitted to the Committee on Claims and was rejected by that Committee but it "was never submitted to any other tribunal" of the defendant and that her claim never was rejected by the various tribunals of defendant as required by the laws of defendant, wherefore she ought not to be barred of this her action.

These three replications all concluded to the country.

The by-laws of defendant set up by the pleadings are as follows:

"Sec. 474. On the death of a life benefit member in good standing, notice thereof shall be sent to the Supreme Record Keeper by the record keeper of the tent to which the member belonged.

"Sec. 475. On receipt of such notice the Supreme Record Keeper shall forward to the record keeper of the tent blank forms, in duplicate, for proofs of death, together with blanks for claimant's affidavits, which must be filled out and sworn to by the beneficiary.

"Sec. 478. The proofs shall also include the affidavit of the attending physician or physicians, stating the disease of which the member died, the duration of

illness and date of death; also the affidavits of the clergymen officiating at the funeral and the undertaker in charge, together with such other sworn testimony as may be required by the Supreme Record Keeper or Supreme Commander to fully establish the death and identity of such deceased member.

"Sec. 479.   The proofs shall be forwarded without unnecessary delay to the Supreme Record Keeper, together with the deceased's certificate of membership, and shall constitute the claim of the beneficiary against the life benefit fund.   The Supreme Record Keeper shall present the proofs of the *Committee on Claims* as provided in the by-laws.

"Sec. 480.   The Supreme Commander, Supreme Record Keeper and Supreme Counselor shall constitute the Committee on Claims of the Supreme Tent, to which shall be referred all claims against the benefit funds of the Association.

"Sec. 482.   Claims *not approved by the Committee* on Claims, or a majority thereof, shall be referred to the Board of Trustees.

"Sec. 485.   If the Board of Trustees approves a claim it shall be paid at once by warrant on the proper fund; if the Board rejects the claim, it shall give immediate notice thereof to the claimant, and unless the latter appeals to the Court of Appeals, as provided in these laws, such decision shall be a final disposition of the claim.

"Sec. 489.   If the Court of Appeals rejects the claim, immediate notice thereof shall be given to the claimant.   Such rejection shall be a final disposition of the claim unless the claimant appeals to the Supreme Tent.   In case of an appeal by the Supreme Commander, from the action of the Court of Appeals on behalf of the Supreme Tent, notice thereof shall be given at once to the claimant.

"Sec. 493.   No suit at law or in equity shall be commenced or maintained against the Supreme Tent by a member or by any beneficiary or any person claiming under any certificate of membership, until after such member, beneficiary or claimant shall have *exhausted every remedy* provided by these laws, and submitted his claim to the Committee on Claims, the

Board of Trustees, the Court of Appeals and the Supreme Tent, in the manner in these laws provided.

"Sec. 496.  In all claims against the Supreme Tent, that have been submitted and· denied by the *various* tribunals of the Association, no suit in law or equity shall be commenced or maintained unless the same is instituted within one year after the final denial of such claim."

The first and most important question arises upon plaintiff's first replication.  The defendant is a voluntary organization and not one for pecuniary profit to · stockholders   It is an organization for the mutual aid and benefit of the members thereof and to enable members to make some provision for their families at death. The nature of the organization, necessarily known to Kasper Timmerhoff when he joined and became a member, must be taken into consideration in construing the contract involved.  This contract consists not only of the promise that upon his death a sum of not exceeding $2,000, to be raised by assessment upon the surviving members, would be paid to his beneficiary but, also, of the provisions in the by-laws as to the terms and conditions upon which it would be paid.  The by-laws provide that upon the death of a member the record keeper of the tent, that is, the subordinate lodge, to which the member belonged, shall send a notice of the death to· the Supreme Record Keeper; that upon receipt of the notice the Supreme Record Keeper shall forward to the record keeper of the tent forms for proofs of death and for affidavits to be filled out and sworn to by the beneficiary and the proofs of death shall include certain specified papers, together with such other sworn testimony as may be required by the Supreme Record Keeper or Supreme Commander "to fully establish the death and identity" of the deceased member; that, without unnecessary delay, the proofs shall be forwarded to the Supreme Record Keeper, together with the decedent's membership certificate and this "shall constitute the claim of the beneficiary"; that the Supreme Record Keeper shall present

the proofs to the Committee on Claims and claims not approved by a majority of that committee shall be referred to the Board of Trustees; that if that Board rejects a claim it shall give immediate notice of the rejection to the claimant "and unless the latter appeals to the Court of Appeals, as provided in these law, such decision shall be a final disposition of the claim;" that if the Court of Appeals rejects the claim immediate notice of such rejection shall be given to the claimant and "such rejection shall be a final disposition of the claim unless the claimant appeals to the Supreme Tent;" that no suit shall be commenced or maintained against the Supreme Tent "by a member, or by any beneficiary or any person claiming under any certificate of membership, until after such member, beneficiary or claimant shall have exhausted every remedy provided by these by-laws and submitted his claim to the Committee on Claims, the Board of Trustees, the Court of Appeals and the Supreme Tent, in the manner in these laws provided"; and that "In all claims against the Supreme Tent that have been submitted and denied by the *various* tribunals of the Association no suit in law or equity shall be commenced or maintained unless the same is instituted within one year after the final denial of such claim."

It is contended on behalf of plaintiff that this contract between the parties is unlawful and void because it abridges plaintiff's right to resort to the courts. In argument plaintiff's attorneys treat the provisions of the by-laws we are concerned with in this connection merely as by-laws of an insurance company. We think that in determining the questions raised in this case it is more accurate to regard the provisions as part of the contract between the decedent and the association.

It must be borne in mind that courts will not lightly lay hands upon and abrogate or destroy contracts between parties. In Mathews v. People, 202 Ill. 389, at page 401, our Supreme Court said: "It is now well settled that the privilege of contracting is both a lib-

erty, and a property right," and announced that "liberty" includes the right to make contracts and to have them enforced, because the right to make contracts and to enforce contracts is included in the right to acquire property. In that case the Supreme Court also pointed out that liberty of contract is guaranteed and protected both by the federal and the state constitutions. Indeed, it has been truly said by the Supreme Court of the United States that the right to contract is an inherent right and antedates the formation of governments and the enactment of laws. The right to enter into contracts is not derived from the government, but exists independent of government and of the laws. No contract is to be regarded as unlawful unless some statutory provision or principle of the common law inhibiting the same be pointed out. A wrongful abrogation or destruction of a contract by either a legislature or a court, or by any state agency, would be an unlawful invasion of a right protected by both the federal constitution and the constitution of this state.

After carefully considering the provisions in the by-laws presented to us, which are above set forth, we do not find that they are designed or intended to prevent parties, either the member or beneficiaries, from appealing to the courts for relief if not paid when they conceive themselves entitled to payment. On the contrary, the provisions contemplate possible application to the courts. True, it is provided, as a condition pre-cedent to application the courts, certain *ex parte* proofs of claim, by way of affidavits and otherwise, shall first be submitted to the association; but we see nothing unlawful in parties embodying such provision in their contract if they choose. Certainly we cannot hold that such provision in a contract between parties *sui juris* is so unreasonable that courts will not enforce it. There is no general rule of law in this state to the effect that it is unlawful to embody in contracts conditions precedent to application to the courts in case of

breach. On the contrary it is well established as the law here that parties may insert in their agreements conditions precedent to bringing suit; that such provisions are not agreements to oust the courts of their jurisdiction and that such provisions will be respected by the courts. Niagara Fire Insurance Co. v. Bishop, 154 Ill. 9. The submission of the claim provided for in the contract involved in the case at bar is rather an *ex parte* proceeding upon evidence submitted by the claimant than a trial or hearing in the nature of a judicial proceeding or an arbitration; and this fact militates against the idea that the submission was designed to be such a determination or adjudication as would preclude the bringing of a suit. Considerable stress is, in argument, laid upon the fact that submission of the claim must be made to "tribunals of the society" as they are called, and that such requirement is unreasonable and against public policy and hence unlawful and void. True, the Committee on Claims, the Board of Trustees, the Court of Appeals, so-called, and the Supreme Tent are all agencies of the Association, but, as already stated, our construction of the contract is that the parties did not grant or invest these bodies collectively, or any of them, with power of decision conclusive upon the merits. These agencies are only to determine whether or not the association shall voluntarily pay the claim presented, that is, pay without suit. The association is not an organization for profit to owners or stockholders and, in view of its fraternal and mutual nature, it is particularly desirable that the investigation of claims presented should be most thorough and careful before payment. The members of the association in adopting these by-laws apparently acted upon the theory or policy that if one body alone possessed the power of determining what claims should be paid, the power of that body would be too great for the welfare of the association as a whole. We know of no principle of law under which such policy can be held unreasonable and void. In determining upon this pol-

icy of the association every member, undoubtedly, had an equal voice. In selecting the agencies referred to, also, every member, including the deceased, undoubterly had an equal voice. In a sense, each of the bodies represented each member, including the deceased, as well as the association. We see nothing so unreasonable as to be unlawful in an organization of a mutual nature, such as this defendant, requiring that claimants, whether members or the beneficiaries of deceased members, shall submit their claims not only to one but to two or three agencies, of the association to pass thereupon and determine whether the association shall voluntarily pay. It may be, to some extent, onerous upon the claimant but, according to the determination of the members of this association, including decedent, the best interests of all the members of defendant, collectively, demanded such rule. At all events the decedent by becoming one of the members of defendant and voluntarily contracting for such submission agreed thereto. The member's beneficiary can have no greater right to repudiate the member's contract than the member himself had. We do not find the contract for such submission to be either *malum per se* or *malum prohibitum*. In no manner and to no extent do the contract provisions complained of abridge the right to resort to the court except in that the claim must first be submitted to the mentioned agencies of the defendant association and in that there is a contractual limitation upon the time within which suit must be brought. In neither respect is there any violation of law.

It is a well-established principle of the common law that parties can by contract for life or fire insurance fix a time within which suit must be brought after death or fire. Baker v. Baker, 139 Ill. App. 217; Riddlesbarger v. Hartford Ins. Co., 7 Wall. (U. S.) 386; Peoria M. and F. Ins. Co. v. Whitehill, 25 Ill. 382 (466). These contracts between mutual benefit associations and members are analogous and similar in their nature to life insurance contracts. There is no reason why

the doctrine of validity of contractual limitations upon the time within which suit must be brought should not be applied to mutual benefit association contracts.

Plaintiff's attorneys contend that C., B. & Q. Ry. Co. v. Hendricks, 125 Ill. App. 580; Great Hive L. of the M. M. v. Hodge, 130 Ill. App. 3, and Sup. C. of I. Order of Foresters v. Mutter, 105 Ill. App. 518, sustain plaintiff's contention that the by-laws requiring her to submit her claim to defendant's various tribunals before she could commence or maintain any suit at law or in equity are void. At the start, let us not be misled by the use of the term "tribunals." The use of that term, speaking accurately, implies that bodies concerning which it is used possess power of decision of adjudicative effectiveness. Adjudication is a governmental function, the exercise of the sovereign power of the state. Kelly v. Fahrney, 145 Ill. App. 80, 99-100. Plaintiff's attorneys, however, as we understand, mean that the by-laws requiring plaintiff to submit her claim to the various agencies or bodies selected and established by defendant, before she could commence or maintain any suit, are void. The most conclusive effectiveness that can result from a submission of a claim or controversy to a non-judicial body or agency is an estoppel *in pais*. This estoppel is, however, in many instances but not in all, of equal preclusive effectiveness with an estoppel of record, i. e. the decision of a court.

Before taking up the above cases presented on behalf of plaintiff we will consider People v. Order of Foresters, 162 Ill. 78, and Supreme Lodge O. M. P. v. Meister, 204 Ill. 527, cited in the presented cases as sustaining the contention of plaintiff. It is our imperative duty to obey and our sincere respect inclines us to follow the decisions of our Supreme Court. At the same time we are burdened with the duty to differentiate between what that court has decided and what may be merely an expression in one of its opinions, not necessary to the decision of the particular case. In

the opinion in the celebrated case of Cohens v. Virginia, 6 Wheat. 264, Chief Justice Marshall, at page 399, said: "The counsel for the defendant in error urge, in opposition to this rule of construction, some dicta of the court in Marbury v. Madison.

"It is a maxim not to be disregarded that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

The case of People v. Order of Foresters involved the exercise of the power of expulsion by the Foresters, a fraternal benefit organization, i. e., the power of disciplining its members. That case was a *mandamus* proceeding whereby the relator, who had been expelled, sought reinstatement. The case, as therein stated, is one that "fairly presents the question, whether the relator could resort to the courts * * * without first exhausting the remedies secured to her by the constitution and by-laws of the order itself." The court carefully considered that question and held that the relator could not resort to the courts until she had first prosecuted the appeals provided for in the by-laws of the order. In other words, as she had agreed to resort to such remedies as the constitution and the by-laws of the order provided, she must first exhaust those before she would have a standing in court. In the opinion in that case (p. 83) it is said: "It is to be remembered, however, that there is a clear distinction between the obligation to appeal from the lower to the higher tribunals of the society itself resting upon one who presents

a question of discipline, and such obligation so far as it concerns one who asserts a claim to money due upon a contract. Where the controversy is concerning the discipline or policy or doctrine of the order or fraternity, the member must resort to the method of procedure prescribed by the association including the remedy by appeal, before invoking the power of the courts. But it is otherwise, where a member claims money due from the society on its contract, or where the beneficiary of a deceased member claims money due from the society on its contract of insurance." It will be observed that the same provisions in the same contract are in that case declared to be both valid and effectual and invalid and ineffectual, as contractual provisions, dependent upon the relief sought from the court under the contract. But what is declared in that case to be the law in instances where relief is sought upon "a claim to money due upon a contract" is clearly *obiter dictum*, for there was no such claim involved in the case.

The expression in the Meister case, 204 Ill. 527, favorable to plaintiff's contention herein, is predicated wholly upon the authority of the Forester case. In the Meister case the court had before it a suit in assumpsit upon a benefit certificate similar to the one at bar. In that case the main controversy appears to have been in respect to a question of fact. The Supreme Court arrived at the conclusion that there was some evidence in the record which fairly sustained appellee's contention and that therefore the judgment of the Appellate Court in respect of that question was conclusive upon the Supreme Court. After thus disposing of that question the court said: "It is also urged that the appellee is barred of a right to recover by reason of a failure to file proof of death according to the by-laws of the appellant." This contention the court disposed of by pointing out that after the member's death the lodge had sent out a certain circular wherein it asserted its non-liability upon the benefit

certificate in suit and holding that this amounted to a waiver of the by-law provisions requiring proof of death to be made within a specified time. And, continuing, in this same connection, the opinion further says: "Neither was it compulsory upon the appellee that she submit her claim for adjudication to the tribunal provided for in the by-laws of the appellant before she could resort to the courts by instituting suit upon said benefit certificate. People v. Order of Foresters, 162 Ill. 78." We have examined this Meister case with the greatest care, not only as it appears in the place cited, but, also, as it appears in 105 Ill. App. 471, and in 78 Ill. App. 649, and nowhere do the shown facts indicate that any by-laws or contract provisions were involved similar to those we are here considering. What was said in the Meister case may, so far as we can see, have been said with reference to some tribunal, agency or body, or by-laws, entirely different from those we are now concerned with. Comprehensive as the expression used is, it could not have been intended to mean that no condition precedent to the bringing of suit upon an insurance contract can be valid and compulsory, for such conditions precedent have been held valid in fire insurance policies. Phenix Ins. Co. v. Stocks, 149 Ill. 319, 331-2, and Phenix Ins. Co. v. Lorton, 109 Ill. App. 63, 65. We know of no reason why, under the law, such conditions should be valid and a lawful subject-matter of contract in fire insurance contracts and not so in life insurance contracts.

The case of C., B. & Q. Ry. Co. v. Hendricks, 125 Ill. App. 580, is not at all in point upon the proposition involved in the present controversy. The provision there involved was one excluding the ordinary courts of justice altogether. Such provisions were there held to be unreasonable. The provision here involved is different and is not designed altogether to exclude the courts.

The question in Great Hive, etc., v. Hodge, 130 Ill. App. 1, was a like question of totally excluding the

ordinary courts of justice and that case is therefore not in point here. What is said in the opinion in that case regarding provisions which merely require claims to be submitted to some non-judicial body as a condition precedent to bringing suit is entirely *obiter*.

The case of Supreme Court of the Independent Order of Foresters v. Mutter, 105 Ill. App. 518, is in point and sustains the contention of plaintiff herein. That case involves a claim for money due upon a contract and the decision therein is based wholly upon what was said in the Forester case first above mentioned. We regard the holding therein, so far as authority is concerned, to be founded upon an *obiter dictum* and as having no foundation in principle, and therefore feel obliged to differ from what is said in that case to the effect that a party to a contract or his privy may disregard a provision in the contract requiring a demand or submission of his claim, according to the contract, preliminary to bringing suit.

The fairness of a contract, made between parties fully competent to contract, is not a subject of inquiry in an action at law where no fraud or overreaching is claimed.

Plaintiff's second replication to the second plea, that she had begun a suit within the contractual limitation period but in her absence it was dismissed, presents no sufficient reply to that plea. Riddlesbarger v. Hartford Ins. Co., 7 Wall. (U. S.) 386, 391. What is said in the replication with reference to the court refusing to reinstate the dismissed suit is of no consequence, for this court cannot, upon this writ of error, investigate the soundness of any ruling of the trial court in that suit. Neither are we concerned with what is in that replication set up with the view of showing that the conduct of defendant's counsel in opposing the motion made to reinstate the dismissed suit and in refusing to agree to a reinstatement thereof is unconscionable and should now operate to estop defendant from contending that the suit brought later was instituted too late.

This matter does not present a reply to the second plea sufficient in law.

The third replication sets up matter in bar which, if it were sufficient for any purpose, would be matter in abatement of plaintiff's own suit. What is there set up amounts, in substance, to this, that as yet plaintiff's claim has not been rejected or denied by the agencies or bodies to which the contract between the parties requires it to be presented and by whom it must be rejected or denied before suit can be brought. Nothing appears in that replication which we regard as sufficient to defeat the second plea.

The record presents to us no reason for disturbing the judgment rendered and it must therefore be affirmed.

*Affirmed.*