CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL. v. LOUIS OLSEN.*

FILED DECEMBER 16, 1903.  No. 12,961.

1. Remedies: ELECTION OF. One who is entitled to a choice of remedies, and takes such action as in law amounts to an election, is, by such election, precluded from pursuing the other remedy, but a mistaken and unsuccessful attempt to do so will not annul the former election, nor bar the right to pursue the remedy first selected.

2. Application of Rule. The right given a member, by the regulations

* Rehearing denied. See opinion, p, 570, *post.*

of the relief department of the defendant company, to "elect to
accept the benefits in pursuance of these regulations, or to prose-
cute. such claims as he may have at law against the company,"
when construed with the contract and regulations as a whole,
requires the application of the well settled rule of law in regard
to election of remedies.

3. **Railroad:** RELIEF DEPARTMENT: DISABILITY. The contract was for
"payment for each day of disability by reason of accident," and
the regulations provide that "the word 'disability' shall be held
to mean physical inability to work." The decision of the medical
examiner that plaintiff, who had suffered amputation of a leg by
reason of his injury, was "able to work," will not be construed
to mean that plaintiff has recovered from his disability, when it
is shown by the evidence that the examiner at the same time
declared plaintiff "able to do light work at present, * * * but
he is still disabled."

4. **Disability:** DECISION OF EXAMINER. The decision of the medical
examiner that plaintiff is "not entitled to any further disability
benefits" is a mere conclusion, and is not binding upon the
parties.

ERROR to the district court for Cass county: PAUL JES-
SEN, JUDGE. *Affirmed.*

*J. W. Deweese, Byron Clark* and *Frank Bishop,* for
plaintiff in error.

*Matthew Gering, contra.*

SEDGWICK, J.

The plaintiff in the court below was in the employ of
the defendant company as a carpenter in its shops at
Plattsmouth, Nebraska. He was also a member of the
voluntary relief department of the company. The nature
and terms of the contract of such membership are set forth
in former opinions of this court. *Chicago, B. & Q. R. Co.
v. Wymore,* 40 Neb. 645; *Chicago, B. & Q. R. Co. v. Bell,*
44 Neb. 44.

On the 14th day of August, 1896, while the plaintiff was
engaged in his work for the company, he was injured
by one of the company's locomotives, from the effects of
which he suffered an amputation of one of his legs, below
the knee. He applied to the company for relief benefits

under his membership contract, and received one dollar a day for fifty-two weeks, and fifty cents a day thereafter until the 16th day of September, 1897. He then applied to the company for work, stating that he was ready to work again, and the medical director of the department reported to the department that the plaintiff had recovered from his disability to work. A misunderstanding arose between the plaintiff and the defendant in regard to the terms of his reemployment with the company, and the plaintiff began an action in the district court for Cass county against the defendant to recover damages on account of his injury, which he claimed was the result of the negligence of the defendant. That action was tried by a jury, and a verdict rendered in favor of the defendant company, from which no appeal has been taken. Afterwards, the plaintiff brought this action in the district court for Cass county against the defendant company to recover relief benefits, claimed to be due the plaintiff from and after the 16th day of September, 1897, at fifty cents a day. Upon the trial by the court without a jury there were findings and judgment in favor of the plaintiff, which judgment the company seeks to have reviewed by these proceedings.

1. The first defense is that the plaintiff, by the commencement of his action for damages, has forfeited his right to relief benefits under the contract. It is insisted that the rule of law, that "One who is entitled to a choice of remedies, and takes such action as in law amounts to an election, is, by such election, precluded from pursuing the other remedy, but a mistaken and unsuccessful attempt to do so will not annul the former election, nor bar the right to pursue the remedy first selected," does not apply in this case.

In the brief upon this point it is said:

"It should be borne in mind that the plaintiff, independent of his contract of membership, has no claim whatever on the relief fund, and under his contract he has no other or different right than what he contracted for. The relief benefit is governed by the terms of the contract.

When he made the contract he knew, in case of injury, that he had a right, as between himself and the company, to look to the company for damages if he believed that the injury was caused by the company's fault; and he had a perfect right to agree that, in case he brought suit to enforce a claim for damages, he would have no claim upon the relief fund mentioned in his contract. As he had no right to the relief fund prior to the making of the contract, he is in no position to urge a claim not in accord with the terms of the contract; so he must take his rights to the benefits under the contract, with the conditions imposed in that contract, or not at all."

That is, by the contract for relief benefits, the plaintiff has agreed that his right to these benefits depends upon the condition named in the contract, that he shall not commence suit against the company for damages on account of injury, and it is, therefore, not a case of the election of remedies.

The contract under which the plaintiff claims relief benefits limits his right to maintain an action on that contract. It also imposes conditions upon the plaintiff, limiting his right to maintain an action for damages on account of the negligence of the defendant resulting in the injury.

Rule 63, which is expressly made a part of the contract, was amended in 1894, before this cause of action arose, as follows:

"In case of injury to a member, he may elect to accept the benefits in pursuance of these regulations, or to prosecute such claims as he may have at law against the company.

"The acceptance by the member of benefits for injury shall operate as a release and satisfaction of all claims against the company * * * for damages arising from or growing out of such injury. * * * And further, if any suit shall be brought against the company for damages arising from or growing out of injury or death occuring to a member, the benefits otherwise pay-

able and all obligations of the relief department and of the company, created by the membership of such member in the relief fund, shall thereupon be forfeited without any declaration or other act by the relief department or the company."

This expressly makes the right to do the one depend upon his forbearing to do the other. By the terms of this contract, the acceptance by the member of relief benefits operates as a release and satisfaction of all claims against the company for damages arising from or growing out of such injury. Both remedies are thus brought within the purview of the contract.

If an employee, who is a member of the relief department, is injured in the service of the company, his claim for relief benefits is a contract right. The provisions of the contract are clear and explicit. The amount due him is not subject to serious debate. His injury may or may not have been due to the negligence of the company. His supposed claim for damages may be doubtful, but his right to the benefits from the relief department is fixed and certain. He may have, as is said in defendant's brief, "the sure benefits of relief funds under his contract without any expense or litigation." After he has elected to avail himself of this contract and, by so doing, has thereby given the company an absolute defense against any suit for damages, shall he be held to have forfeited these "sure benefits" by an ill advised and wholly desperate suit against the company? Must he pay the company a specified amount (in this case $750) as a penalty for his hopeless action? If the contract were so worded as to preclude any other meaning, it is doubtful whether such a forfeiture would be enforced. While he has a doubtful claim for damages for the injury he has sustained, he may prosecute that claim, and, by so doing, abandon his claim for relief benefits. After he has elected to accept the relief benefits, in pursuance of his contract, he has thereby "released and satisfied" all claims against the company for damages from or growing out of the injury.

The rights of the parties are then absolutely fixed. He no longer has any claim against the company for damages, and the proposed penalty for attempting to assert one may well be thought too unconscionable to be enforced by a court of justice.

The provision that, "If any suit shall be brought against the company for damages arising from or growing out of injury or death occurring to a member, the benefits otherwise payable, and all obligations of the relief department of the company, created by the membership of such member in the relief fund, shall thereupon be forfeited," must be construed in the light of the whole contract, and its effect is to designate what acts will be considered as an election to rely upon such claims as he may have at law against the company for damages.

This language, construed with the leading clause in the same rule, "In case of injury to a member he may elect to accept the benefits in pursuance of these regulations, or to prosecute such claims as he may have against the company," provides for the application of the well settled rules of law in regard to election of remedies. This must be the fair construction of the rule when taken as a whole.

There is no doubt that, if the plaintiff had elected to pursue one of the two courses, and had thereby fixed his rights under the contract, and he should afterwards desire to renounce that election and to take the other course, the defendant might consent to his so doing, and after such consent and action taken pursuant to such change of election, both parties might treat the latter course as the one elected by the plaintiff.

This seems to have been the condition in *Clinton v. Chicago, B. & Q. R. Co.,* 60 Neb. 692. In that case the plaintiff had received relief benefits under his contract. Afterwards, he attempted to renounce that election by prosecuting an action for damages for the injury sustained. The company paid him damages under this latter claim, and it was held that the plaintiff could not

afterwards allege that he had not elected to prosecute his action for damages; and that his claim for the relief benefits of the contract was abandoned and forfeited.

In the case at bar, the company insisted that the plaintiff had made his election to rely upon his relief benefits under his contract, and that he could not be allowed to abandon that election and make a claim for damages for the injuries sustained. This contention of the company was sustained by the court. It was held that the plaintiff had elected to take the relief benefits and must abide by that election, and both parties must be now held to be bound by that determination.

2. The remaining question controverted between the parties, is as to the meaning of the word "disability" as used in the contract between the parties. The contract provides for "payment for each day of disability by reason of accident occurring while the party is in the discharge of duty in the service." The rule of the department, in force at the time the plaintiff became a member, defines the word "disability" as follows: "Wherever used in these regulations, the word 'disability' shall be held to mean sickness or injury by reason of which an employee is unfit for duty in the service." Afterwards, this rule was amended to read: "The word 'disability' shall be held to mean sickness or injury by reason of which, in the opinion of the superintendent of the relief department, a member should not work." And still later the rule was again amended and provided: "The word 'disability' shall be held to mean physical inability to work by reason of sickness or accidental injury; and the word 'disabled' shall apply to members thus physically unable to work. The decision as to when members are disabled and when they are able to work, shall rest with the medical officers of the relief department."

The plaintiff contends that it does not sufficiently appear that these amendments were made in such manner as to be binding upon him, but, in our view of the matter, it is unnecessary to determine that question. What,

then, is the meaning of the word "disability" as used in the regulations of the department, as finally amended? Upon the evidence contained in the record in this case, was the plaintiff disabled as the result of his injury, and did that disability continue during the time for which he seeks, in this action, to recover relief benefits?

The plaintiff, as we have already seen, was paid benefits during the first year after his injury at the rate of one dollar a day, and for about one month thereafter at one-half that rate. The rule of the department, in that regard, provided for the payment to a member of the class to which plaintiff belonged of one dollar a day for a period of no longer than fifty-two weeks, and at half that rate thereafter during the continuance of the disability."

It is stipulated between the parties: "That on the 16th day of September, 1897, the medical examiner of said relief department, and who had had medical charge of the plaintiff during his disability, reported, to the railroad company, the plaintiff, in accordance with the requirements of the relief department, as able to work on said day; and decided and reported that the plaintiff was not entitled to any further disability benefits."

It also appears from the evidence that the plaintiff then applied to the company for work, and the company offered him employment, but the plaintiff insisted upon a guaranty of continued employment, or, as he stated it, he "thought he ought to have a guaranty for a life job." This the company refused; and the company, on its part, required him, as a condition of his employment, to release the company from further claims on account of his injury.

The medical examiner testified upon the trial:

Q. What conclusion did you come to with reference to his ability to work?

A. I had seen Mr. Olsen almost every week since the time of his injury, and, after he was not confined to the house, he met me at the office of Dr. Livingston on Tuesdays. When we had talked in regard to his condition,

off and on, I told Mr. Olsen I thought he was about able for work soon. He said, "Yes, sir, I think I am." I said, "I will see Mr. Helps, when I am at the shops some time, and see him in regard to work for you." * * * He was wearing his artificial limb and said he was anxious to get to work, and I told him I thought he was able to work. And, after I made arrangements with Mr. Helps in regard to getting work, I saw him at Dr. Livingston's office. * * * After examination, I came to the conclusion he was able to do light work at present.

And upon cross-examination he was questioned and answered as follows:

Q. Then you think, Doctor, do you, that a man who has his leg cut off is fit for service?

(The witness.) What kind of service?

Q. Any kind of service which requires manual labor?

(The witness.) I think there are lots of jobs he could do.

Q. Do you think he could do carpenter's work?

A. It depends on what kind.

Q. You know what kind of work he was engaged in— car repairing, climbing ladders about cars; you know about this?

A. Yes, sir. I don't think he could climb cars. No, sir.

Q. Do you think he could perform service as carpenter, in the same way or any where near in the same manner as he did before the injury?

A. I don't think he could have filled the position he occupied at the time he was injured, at the time I reported him for work.

Q. Do you mean to be understood as saying, upon your reputation as a professional man, that this man is not injured now the same way as he was during the early days of September, 1897?

A. He has recovered from his injury, but he is disabled.

Q. He will be disabled constantly?

A. Yes, sir.

Q. Isn't he just as much disabled now, and wouldn't

you say, Doctor, upon your professional knowledge, as he was on the 1st day of September, 1897?

A. I have not examined him, but I should say, "No."

Q. State to the court in what particular there is any difference.

A. He had been sick for a long while and was run down and had performed no exercise. I spoke of his condition then. He was not seasoned up, so to speak.

Q. For instance, on or about the 15th of September, he was much more disabled than he is now?

A. His injury was healed. Perhaps not from his injury.

Q. From what then?

A. From lack of exercise.

Q. He was being paid for disability?

A. Yes, sir.

Q. He was receiving disability benefits?

A. Yes, sir.

Q. That disability you were allowing him because he had lost his leg?

A. Yes, sir.

Q. And it is still gone?

A. Yes, sir.

Q. Explain to the court where there is any difference in his injury, in his general health now and what it was then.

A. He may get over the injury; recover. He can recover from that injury, but still he is disabled.

Q. He is still disabled?

A. For some things.

Q. He is not disabled from running a bowling alley and billiard hall?

A. I should think not.

It appears from the above quoted stipulation that the decision of the medical examiner was, "That the plaintiff was able to work" and "was not entitled to any further disability benefits." Of course, if he were still disabled, he would still be entitled to benefits. In that case, the

statement, that he was not entitled to benefits, would be a conclusion only, and would be erroneous. What the examiner decided, then, was that the plaintiff was able to work, from which he concluded that he was not entitled to relief benefits. The evidence of the examiner shows, in what sense it could be said that plaintiff was able to work: "He was able to do light work at present;" "He has recovered from his injury, but he is disabled." The contention of the defendant appears to be, that the meaning of the rules of the department is that the decision of the medical examiner is binding upon both parties, and that the point to be decided by the examiner was, whether plaintiff had so far recovered that he could work. How much or what kind of work he could do, was immaterial. If the decision was that he had so far recovered that he could do any act that could fairly be denominated work, his right to benefits was thereby terminated. This would seem to be the literal meaning of the words used, if taken by themselves. No doubt this construction must be adopted unless the language, taken in connection with the remainder of the contract, is held to mean that inability to work is inability to perform his ordinary duties, in the employment in which he was engaged at the time of his injury.

There seems to be no middle ground of construction of the contract. We can not give it the former meaning. The circumstances would be rare indeed, when the medical examiner of the company could not find something that the injured man might do, which could fairly be called work. These contracts for relief benefits are plainly not conceived in such a spirit. The latter construction is in harmony with the spirit and purpose of the contract, and we prefer to adopt it. Whether the meaning of the contract is that the decision of the medical examiner shall be conclusive upon the parties as to the question of disability, and whether such provision would be enforced, are questions not necessary to the determination of this case, and are not decided.

There is no error in the record, and the judgment of the district court is

AFFIRMED.

The following opinion upon motion for rehearing was filed May 18, 1904. *Rehearing denied:*

SEDGWICK, J.

In the brief upon this motion for rehearing it is insisted that:

"The hard and fast rule of determining the meaning of the words, 'physical inability to work,' by holding that they mean the same kind of work at which he was engaged at the time of the accident, * * * seems unreasonable and unwarranted."

There seems to be force in the argument that, if the plaintiff had recovered from the injury so as to be able to perform labor similar and equivalent to that required in the employment in which he was engaged at the time of the accident, or was able to perform the duties of an engagement that was open and available to him, whereby he could support and maintain himself as he was able to do before the accident, he was "able to work" within the meaning of that expression in the contract.

The conclusion in this case would not be affected by such construction. The fact in this case as to whether he had recovered from his disability, as pointed out in the opinion, is to be determined upon the stipulation of the parties to the effect that the medical examiner decided "that the plaintiff was able to work" and "was not entitled to any further disability benefits," and upon the evidence of the examiner himself showing in what sense, and to what extent, the plaintiff was "able to work." Under that stipulation and evidence, the plaintiff was still disabled under either construction of the contract. It is therefore unnecessary, in this case, to decide whether "inability to work is inability to perform his ordinary duties in the employment in which he was en-

gaged at the time of his injury," or the word inability should be construed as above indicated.

Upon the other point urged in the motion and brief, no authority is cited supporting the proposition that the defendant could, in the first action, take the position that it was not liable for damages because plaintiff had elected to receive relief benefits, and, having defeated plaintiff's action for damages upon that contention, then insist that it was not liable for relief benefits because of the bringing of the action which it had so defeated.

We are satisfied with our conclusion upon this point, for the reasons stated in the opinion.

The motion for rehearing is, therefore, overruled.

REHEARING DENIED.