HATTIE KEITH, ADMINISTRATRIX, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY ET AL., APPELLANTS.

FILED JUNE 4, 1908. No. 15,163.

1. **Master and Servant: BENEFITS: DISABILITY.** Railway employees only were permitted to join the relief department of the defendant company, an institution organized to pay disability benefits to members. The contract for benefits provided: "The word 'disability' shall be held to mean physical inability to work." *Held,* That the words "physical inability to work" mean inability to perform such labor as the injured member was engaged in at the time of his injury, or similar labor which would enable him to earn wages equally as remunerative.

2. ———: ———: ———. Under the provisions of such contract, if an injured member of the relief department recovers so that he is able to perform such work as is contemplated in the contract, or similar work equally as desirable and remunerative, then the obligation of the defendants to pay disability benefits ceases. But recovery sufficient to enable him to earn much smaller wages at some other employment, or employment procured through the charity or indulgence of friends or relatives, when, in fact, he has not recovered from his disabilities, is insufficient to release defendants.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Greene, Breckenridge & Matters* and *W. H. Hatteroth,* for appellants.

*Smyth & Smith, contra.*

EPPERSON, C.

This action was instituted by Gant Keith in his life time, and later prosecuted by the administratrix of his estate against the Chicago, Burlington & Quincy Railroad Company and the Chicago, Burlington & Quincy Railway Company to recover $638.70, alleged to be due upon a certificate of membership in the relief fund of the Burlington voluntary relief department for disability benefits at the rate of 75 cents a day from December 10, 1901, to April 4, 1904, at which time the said Gant Keith died. On September 11, 1900, the deceased entered the employ of the railway company as a switchman, and became a member of the relief department. Three days later, while thus employed, he received an injury from which it appears he never fully recovered. He was entitled to receive from the relief fund $1.50 a day for 52 weeks, and thereafter 75 cents a day during the continuance of his disability. He received such relief until December 10, 1901, at which time the defendants refused further payment, claiming that his disability had then ceased. At one time Keith attempted to resume his duties as a switchman, but was unable to do so. It is undisputed that he was disabled until December 10, 1901. At that time he reported for work to his employing officer, who tendered him some position as a utility man at the rate of $35 a month. This employment Keith refused, either because he was unable to do the work or because the wages offered were unsatisfactory. He then obtained employment as a bartender in his brother's saloon until April, 1902, and thereafter until his death was in the employ of one Dwyer, who succeeded his brother in the saloon business. While in the employ of his brother and for the first year of his employment

by Dwyer he received $50 a month wages, and thereafter $60 a month. During all this time Keith could not place the injured foot upon the ground naturally. He was required to use a crutch or a cane. The toes of the foot stood upright. Every night the foot was swollen. But as bartender he was able to spare his foot, not being required to stand upon it during all the time he was on duty. The evidence shows that he kept a chair behind the bar, which he used whenever he could; that he was enabled a part of the time at least to use a footrest. By reason of the injury he was required to quit work occasionally, sometimes one day and sometimes more, and some days he would have to quit for a short time only. His employer testified, in substance, that he was not a good man so far as his work was concerned, but from a business standpoint that he was very well thought of; that he took a good deal of interest in the place; that he had many friends throughout the country, and was a good talker. In the court below the plaintiff recovered judgment in the full amount claimed, and defendants appeal.

The rights of the parties depend upon the construction of a part of one section of the regulations of the relief department in force at the time deceased became a member, and which is as follows: "Wherever used in these regulations, the word 'disability' shall be held to mean physical inability to work by reason of sickness or accidental injury, and the word 'disabled' shall apply to members thus physically unable to work." It is the defendants' contention that the words "physical inability to work," as used above, mean physical inability to do any work whereby one could maintain himself, and that the deceased, having recovered from his injury so as to be able to perform the duties of a bartender, was under no disability within the meaning of the regulations quoted. The trial court refused an instruction submitting this theory to the jury. Instead, he gave an instruction in which he said: "By the word 'disability' is meant inability to perform the ordinary duties in the employment in

which Keith was engaged at the time of his injuries."
It would, indeed, be a harsh rule which would require the
relief department to pay to its members continuously the
relief promised during disability in the event that such
member, although unable to resume the employment in
which he was engaged at the time of the injury, should
so far recover as to be physically able to earn wages equal
to or greater than the wages earned by him in such em-
ployment. Such construction cannot be given to the pro-
visions of this contract. If an injured member of the
relief department recovers to the extent that he is no
longer disabled in the performance of the work contem-
plated or similar work, that is, employment, equally as
desirable and remunerative, then the obligation of the
defendants to pay disability benefits ceases. The work
contemplated is the work of railway employees. The pur-
pose of the department is to partially indemnify its mem-
bers against the loss of wages occasioned by their inability
to perform such labor. In other words, the "disability"
for which partial indemnity is paid is the disability which
prevents the member from doing the "work" contemplated
in the contract, and which results in his financial loss.
The regulations of the relief department are similar to the
by-laws of a mutual insurance company. They enter into
and become a part of the contract. Indemnity to the
injured member, and not profits, is the object of the de-
partment. This would be defeated if an injured member
would be permitted to collect the benefits provided after
he had recovered to such an extent that he could enter a
similar employment equally as desirable and remuner-
ative.

In *Chicago, B. & Q. R. Co. v. Olsen,* 70 Neb. 570, in the
opinion overruling the motion for rehearing it is said:
"There seems to be force in the argument that, if the
plaintiff had recovered from the injury so as to be able
to perform labor similar and equivalent to that required
in the employment in which he was engaged at the time
of the accident, or was able to perform the duties of an

engagement that was open and available to him, whereby he could support and maintain himself as he was able to do before the accident, he was 'able to work' within the meaning of that expression in the contract." This is a correct rule, and should be adhered to whenever applicable. Defendants invoke it here. It follows, of course, that the instruction given herein was erroneous, in that it defined "disability' as "inability to perform the ordinary duties in the employment in which Keith was engaged at the time of his injuries." But, as we view it, this error was without prejudice. Under the evidence the judgment rendered was the only one permissible. Keith never became physically able to resume his work as a switchman, nor did he ever become physically able to earn wages in any similar employment, nor was he ever able to earn wages equal to the wages of a switchman. He was retained as a bartender notwithstanding his physical defects, which partially incapacitated him. A review of the evidence leads us to the conclusion that he was able to hold this position by reason of his employer's indulgence, and, further, because of a tenacity of purpose on his part to earn what he could in spite of his impaired physical condition. His condition was such that he could not reasonably be expected to go into the business world and procure remunerative employment. He was badly crippled. People usually do not employ such help except at very small wages. The words "physical inability to work," as sued in the regulations of the defendant's relief department, mean inability to perform manual labor which would enable the injured member to earn wages equal to what he would have earned in the employment in which he was engaged at the time he was injured. The fact that the injured member earned wages by employment procured through charitable or indulgent relatives or friends is insufficient to establish his ability to work, within the meaning of the contract. The evidence shows that the minimum which Keith earned in such employment was $72.50 a month, with a prospect for higher wages. The greater.

portion of his employment as a bartender he earned $22.50 less than his minimum wages as a switchman. There is no evidence that he could have commanded greater wages as a bartender or in any other employment.

The error of the district court being without prejudice, we recommend that the judgment be affirmed.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.