JOHN KANE, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED OCTOBER 21, 1911.　No. 16,889.

1. **Master and Servant:** SICK BENEFITS: DISABILITY. A railway night switchman becoming color-blind during his employment is thereby

disabled by sickness within the meaning of his employer's contract that it will pay him sick benefits for a limited period while he is disabled by sickness or accidental injury, provided the fact be established by proof of acute or constitutional disease.

2. ———: RESIGNATION OF SERVANT: EVIDENCE. A statement in a letter written and sent to the plaintiff by the defendant's superintendent of employment that the plaintiff resigned from the defendant's service is not of itself competent evidence against the plaintiff of such resignation.

3. ———: DISABILITY OF SERVANT: EVIDENCE. Nor is the trainmaster's statement that had the medical examiner found the plaintiff to have been afflicted with color-blindness, the physician would have reported that fact to the witness, competent evidence to disprove the plaintiff's contention that he is color-blind.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*James E. Kelby* and *Arthur R. Wells*, for appellant.

*Smyth, Smith & Schall, contra.*

ROOT, J.

This is an action to recover sick benefits. The plaintiff prevailed, and the defendant appeals.

At the time the plaintiff entered the defendant's employ as a switchman in 1891, he also became a member of its relief department. In 1907 the plaintiff, as he contends, was discharged or suspended from his employment because of color-blindness. The litigants' stipulation that the plaintiff should recover a definite sum, should it be determined that the defendant is liable, renders unnecessary a consideration of such errors as are assigned upon the rejection of the evidence offered for the purpose of proving that the plaintiff might have worked for the defendant at a reduced compensation. The only instruction presented for our consideration is a request for a directed verdict in the defendant's favor which the court refused to give. The important question, therefore, is whether the evidence sustains the verdict.

There is sufficient evidence to sustain findings to the effect that the plaintiff became color-blind while in the defendant's employ, that he was discharged because of that defect, and that his condition incapacitated him from following his vocation or any other equally as remunerative. The by-laws of the relief department, among other things, provide: "Wherever used in these regulations the word 'disability' shall be held to mean physical inability to work by reason of sickness or accidental injury, and the word 'disabled' shall apply to members thus physically unable to work;" and "to establish a claim for sick benefits there must be positive evidence of acute or constitutional disease sufficient to cause disability." In *Keith, Adm'x, v. Chicago, B. & Q. R. Co.*, 82 Neb. 12, following *Chicago, B. & Q. R. Co. v. Olsen*, 70 Neb. 559, it was held that, as used in these by-laws, the words "physical inability to work" mean "inability to perform manual labor which would enable the injured member to earn wages equal to what he would have earned in the employment in which he was engaged at the time he was injured." As we have said, the evidence establishes that condition. If, therefore, this condition was the result of sickness within the meaning of the by-laws, the plaintiff was entitled to recover. "Sickness" is defined in the Century Dictionary as: "(1) The state of being sick or suffering from disease; a diseased condition of the system; illness; ill health. (2) A disease; a malady; a particular kind of disorder * * * (4) A disordered, distracted or enfeebled state of anything." In the same book we find a definition of color-blindness as "Incapacity for perceiving colors, or certain colors." In commenting upon that condition the author says: "It is not a mere incapacity for distinguishing colors (for this might be due to want of training), but an absence or great weakness of the sensations upon which the power of distinguishing colors must be founded." There is no direct evidence concerning the cause of this defect in the plaintiff's vision, and the defendant's counsel argue that the court cannot take judicial notice that color-blindness

uniformly is caused by sickness, and that without evidence
to explain the cause of the plaintiff's condition the jury
could not lawfully or logically find that cause to have
been sickness.  Counsel say that this defect may have re-
sulted from the plaintiff's advancing years, and, if so, the
defendant is not liable.  It does appear, however, that the
plaintiff became color-blind while in the defendant's em-
ploy.  There is little, if any, evidence to justify a finding
that this color-blindness is the result of acute sickness;
but could not the jury lawfully have found that it was
caused by constitutional disease?  The by-laws, as we
have seen, recognize constitutional, as well as acute,
disease as a satisfactory cause for a disability which will
entitle the employee to the benefits of the relief depart-
ment.  We may take judicial notice of the fact that this
defect in vision occurs in about 5 per cent. of all human
males in civilized countries, and that it is discovered in
every period of life from infancy to advanced senility.
The jury knew these facts, and were justified in finding
that the plaintiff's optical weakness was inbred, but for
some reason did not become evident during his earlier
years.  We do not doubt that the learned trial judge
exhaustively and clearly instructed the jury concerning
these phases of the case.

Incurable blindness has been judicially determined to
be sickness.  *Regina v. Inhabitants of Bucknell,* 28 Eng.
Law & Eq. 176.  The plaintiff for the purposes of his
vocation is blind, and, being blind, he is sick, within the
meaning of the defendant's regulations.  We conclude,
therefore, that the verdict is sustained by sufficient evi-
dence.

The defendant attempted to prove by its trainmaster at
Wymore, where the plaintiff worked, that, if the depart-
ment's medical examiner had found from an examination
of the plaintiff that he was color-blind, the witness would
have received that report.  The evidence was excluded,
and in this there was no error.  Argument and citation
are not necessary to emphasize that fact.  The court also

refused to permit this witness to testify that, had the plaintiff offered to work, he would have been given his usual employment. The plaintiff was not requested to return to work, nor was work offered to him by the defendant. It is taxing the credulity of the court to argue that the defendant would have continued the plaintiff as a night switchman, with full knowledge that he was color-blind. No such criminal carelessness will be imputed to the defendant or to its trainmaster.

It is customary for the defendant's superintendent of its employment department to issue a service letter upon request of an employee. In response to the plaintiff's request, such a letter was sent to him. This document contained a statement that the plaintiff had resigned, and was excluded when offered in evidence by the defendant. The evident purpose of this proof was to sustain a contention that the plaintiff had not been discharged or suspended. There is no evidence that the letter was a copy of any record kept by the defendant or that the plaintiff was responsible for the statement of alleged facts. The document was time-serving, and, under the circumstances of this case, was properly excluded. Some incompetent evidence was received, but we do not believe it could, or did, mislead the jury. There is no conflict in the evidence that the plaintiff is color-blind, and the incompetent evidence had no bearing on the disputed issue as to whether the plaintiff voluntarily or involuntarily ceased working for the defendant.

We find no error prejudicial to the defendant, and the judgment of the district court therefore is

AFFIRMED.

BARNES and FAWCETT, JJ., dissent.