DORIS ROUTT, APPELLEE, v. BROTHERHOOD OF RAILROAD
TRAINMEN, APPELLANT.

FILED NOVEMBER 3, 1917.    No. 19503.

1. Insurance: CONTRACT: CONSTRUCTION. When there is ambiguity in
   the terms of the contract and certificate of insurance in a fraternal
   beneficiary company, it will be construed in such way as to ac-
   complish the purpose intended, whenever the same may be done
   without violence to the expressed terms of the contract, and in
   accordance with the aims and purposes of such fraternal brother-
   hood.

2. ———: ———: LOSS OF SIGHT. Where the peculiar malady known
   as "color-blindness" so impairs the sight that a member of such
   association who is insured therein is disabled and is  unable
   longer to continue in the train service, and is discharged there-
   from on account of such defect in his vision, this constitutes the
   complete and permanent loss of sight of both eyes within the
   meaning of the contract stated in the opinion.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. *Affirmed.*

*Weaver & Giller,* for appellant.

*Lambert, Shotwell & Shotwell,* contra.

HAMER, J.

The plaintiff and appellee brought suit in the district
court for Douglas county seeking to recover on a benefit
certificate held by him in the defendant company, a
fraternal insurance association. He had for some time
prior to June 5, 1913, been employed by the Union Pa-
cific Railroad Company as a railway trainman. As a
member of the appellant association he carried insurance
to protect himself against disability. He became af-
flicted with what is known as "color-blindness," and was
discharged from the service of the railroad company be-
cause of his infirmity. It is contended by the plaintiff
that as a railroad trainman he had become totally blind,
and that within the terms of the policy held by him in

the defendant association he had suffered the complete and permanent loss of the sight of both eyes. The defendant denied liability upon the ground that "color-blindness" was not a complete and permanent loss of the sight of both eyes. It was also denied that the plaintiff was totally disabled under the meaning of the constitution and by-laws of the defendant. There was a verdict and judgment for the plaintiff for the full face of the policy and interest, amounting in all to $1,740.

The question to be determined, therefore, is whether the total color-blindness sustained by a railway trainman while a member of the defendant association, and which color-blindness disqualified such member from such service, is to be construed as the complete and permanent loss of the sight of both eyes. It appears that the Brotherhood of Railroad Trainmen is an association of many thousand persons organized to promote the welfare of railway trainmen, and to provide insurance for its members, and having a grand lodge at Cleveland, Ohio, and subordinate lodges located in various cities of the United States, one of which is located in the city of Omaha, Nebraska, known as Success Lodge No. 135; that defendant is a fraternal insurance association, and receives from each of its members regular assessments to provide a fund for the payment of sick, accident and death benefits to its members; that during and prior to the month of June, 1913, plaintiff had been a member of the defendant association for a period of more than five years, and on the 1st day of July, 1913, was a member in good standing of Success Lodge No. 135; that the plaintiff had regularly paid his dues and complied with the rules and by-laws of the association; that when the plaintiff became employed by the Union Pacific Railroad Company, September 17, 1907, he was in good health and good physical condition, and was able to perform his duties as a trainman, and did so perform them up to and including the 5th day of June, 1913, when he was discharged from the employment of the said railroad company for the reason that he had become afflicted

with a disease known as "color-blindness," which disease totally and permanently incapacitated him for the duties of a railway trainman. Rule 68 of the defendant association provides: "Any beneficiary member in good standing who shall suffer the amputation or severance of an entire hand at or above the wrist joint, or who shall suffer the amputation or severance of an entire foot at or above the ankle joint, or who shall suffer the complete and permanent loss of sight of both eyes, shall be considered totally and permanently disabled, and shall thereby be entitled to receive, upon furnishing sufficient and satisfactory proofs of such total and permanent disability, the full amount of his beneficiary certificate, but not otherwise." The plaintiff has complied with all the rules of the association.

In *Kane v. Chicago, B. & Q. R. Co.*, 90 Neb. 112, it was held: "A railway night switchman becoming color-blind during his employment is thereby disabled by sickness within the meaning of his employer's contract that it will pay him sick benefits for a limited period while he is disabled by sickness or accidental injury, provided the fact be established by proof of acute or constitutional disease." The court said: "There is sufficient evidence to sustain findings to the effect that the plaintiff became color-blind while in the defendant's employ, that he was discharged because of that defect, and that his condition incapacitated him from following his vocation or any other equally as remunerative." In that case the relief department had certain by-laws which, among other things, provided: "Wherever used in these regulations the word 'disability' shall be held to mean physical inability to work by reason of sickness or accidental injury, and the word 'disabled' shall apply to members thus physically unable to work." A second provision in the by-laws reads: "To establish a claim for sick benefits there must be positive evidence of acute or constitutional disease sufficient to cause disability."

It is claimed in this case that if the plaintiff could use his eyes for any purpose he was not disabled within

the meaning of the provisions contained in section 68, above quoted, and the constitution and by-laws of the association.

In *Beber v. Brotherhood of Railroad Trainmen*, 75 Neb. 183, the question was whether a total loss of three fingers and an injury to the remaining finger and thumb which interfered with their use, and a cutting away of a part of the palm of the hand, constituted a total loss of the hand within the meaning of a by-law of a mutual benefit association providing "indemnity for any member in good standing suffering, by means of physical separation, the loss of a hand at or above the wrist joint." It was contended that in any event the hand should be cut off above the wrist before the plaintiff might recover. The plaintiff was a brakeman, and he was in "Class C." Section 37 of the constitution of the order provided that the member should be entitled to the amount of his certificate "upon his becoming permanently and totally disabled within the meaning of section 45." Section 45 reads: "Any member in good standing, suffering, by means of physical separation, either the loss of a hand at or above the wrist joint, or suffering the loss of a foot at or above the ankle joint, or suffering the loss of the sight of both eyes, shall be considered totally and permanently disabled, and shall receive the full amount of his beneficiary certificate, but not otherwise." In that case the plaintiff received a personal injury by cutting his left hand while splitting wood. As a result of the injury he lost his second, third and fourth fingers and about half of the second, third and fourth metacarpal bones, which removed nearly the half of the palm of his hand, damaged the first and second joints of the index finger, and caused a running sore on the thumb between the second and third joints, which stiffened and impaired the motion of the thumb and practically destroyed its usefulness. The plaintiff's testimony tended to show that the injury had destroyed the usefulness of the hand, but there was evidence offered by the defendant to show that the remaining thumb and finger on the hand

and the stiffened wrist joint were still of some utility to the plaintiff. It was a case very like this. Color-blindness is a loss of the sight and an inability to see certain colors. In the case cited a part of the hand had clearly been left. There was a thumb and a finger. This brings us to the question whether it was the use of the hand that was meant, or its actual loss. This court held it was the use. In the body of the opinion it is said: "What did the defendant company contract to insure against under the provisions of this by-law? Was it the severance of the entire hand at or above the wrist joint, or was it the entire loss of the use of the hand? * * * If the only risk assumed by defendant was the amputation of the whole hand, then the learned trial court was fully justified in directing a verdict for defendant; but, if a fair and liberal interpretation of the contract most favorable to the insured can make it a risk which includes the total loss of the use of the hand by severance, then the question as to whether such loss is established by the evidence is properly one for the triers of such facts. If the officers of the society, who prepared the by-law in which the contract is set forth, have used ambiguous terms, the ambiguities must be interpreted in the manner most favorable to the insured."

In *Lord v. American Mutual Accident Ass'n,* 89 Wis. 19, there was a policy containing a provision for the payment if the injury caused an "immediate, continuous, and total disability." In that case it was held that it was a proper question for the jury to determine whether a total loss of three fingers and part of another on the same hand, and the destruction of the joint of the thumb, and a cutting of the hand, constituted a total loss within the meaning of such provision. The court said: "It is contended that there is no such thing as the loss of the hand unless the injury is such as to require the amputation of the hand above the wrist. That would be too much of a refinement upon language for practical purposes. The hand was for use; and, if it was injured

so as to become useless as a hand, then the defendant became liable for its loss under the contract."

In *Sneck v. Travelers Ins. Co.*, 88 Hun. (N. Y.) 94, 34 N. Y. Supp. 545, the action was on a policy against a "loss by severance of one entire hand or foot." There was a loss of a part of the hand by severance. The plaintiff testified that he had no use of the hand. The court held that the word "severance" in the policy meant the method by which the accident occurred, and that it was the loss of the use of the hand that was insured against, and that the question as to whether the loss was total under the evidence was one of fact for the jury. The same case was reviewed by the court of appeals in 156 N. Y. 669, and the last majority opinion of the intermediate court was approved without division.

Applying the principle declared in the above cases, complete and permanent loss of the sight of both eyes means loss of the use of the eyesight of both eyes for the purposes of the insured's avocation. *Moore v. Ætna Life Ins. Co.*, 75 Or. 47; *Thcorell v. Supreme Court of Honor*, 115 Ill. App. 313; *Supreme Court of Honor v. Turner*, 99 Ill. App. 310; *Sheanon v. Pacific Mutual Life Ins. Co.*, 77 Wis. 618; *International Travelers Ass'n v. Rogers*, 163 S. W. (Tex. Civ. App.) 421.

The plaintiff sought indemnity because of the anticipated loss of the sight of his eyes. That part of section 38 which relates to loss of the eyes reads: "Or who shall suffer the complete and permanent loss of sight of both eyes." The condition is not made that the eyes of the insured shall be taken out of their sockets and away from his physical body, but only that he "shall suffer the complete and permanent loss of sight of both eyes." It does not say that he shall become blind in both eyes so as to become unable to see objects of any kind, but that he shall lose "the sight of both eyes." This he did when he became color-blind. He lost his sight in both eyes. It affected both eyes alike. Besides, the color-blindness was "complete and permanent." He could not see, and that applied to both eyes, and he

was discharged because the defect in his vision made him unfit for railroad service. The thing for which he sought indemnity, loss of his vision, came to him. If his insurance does not indemnify him, it serves no good purpose. Besides, it is ambiguous and misleading and should be construed as the defendant knew the plaintiff would understand it.

A fraternal insurance association of railroad trainmen established and maintained with special reference to furnishing insurance for the benefit of those who are injured by sickness or accident during the time of their employment in the railroad service, and who are thereby disqualified from following their avocation as trainmen, will be deemed to have intended the benefits promised by its insurance certificate, its constitution, by-laws and rules, and, in case of ambiguity in the language used, it will be construed in such a way as to accomplish the purpose intended, whenever the same may be done without violence to the expressed terms of the contract, and in accordance with the aims and purposes of such fraternal brotherhood.

Where the peculiar malady known as "color-blindness" so impairs the sight that the member of such association who is insured therein is disabled and is unable longer to continue in the train service, and is discharged therefrom on account of such defect in his vision, it will be held that he is entitled to the benefits provided by the certificate, the constitution, and by-laws and rules of the society. In such case, while the sight of the insured may not be entirely destroyed for some purposes, it will be deemed destroyed and lost as to the particular avocation of a railroad trainman, and he will be held entitled to recover upon the benefit certificate which he holds.

We are unable to say that the judgment of the district court is wrong. It appears to be right, and it is

AFFIRMED.

LETTON, ROSE and CORNISH, JJ., dissenting.

Insurance contracts which are ambiguous should be construed against the insurer, who usually prepares the contract; but there is no ambiguity in the contract under consideration. The clause under which the plaintiff claims recovery provides: "Any beneficiary member in good standing * * * who shall suffer the *complete and permanent loss of sight of both eyes* shall be considered totally and permanently disabled, and shall thereby be entitled to receive, upon furnishing sufficient and satisfactory proofs of such total and permanent disability, the full amount of his beneficiary certificate, but not otherwise."

The plaintiff's eyes became affected in some way so that he was unable to distinguish colors, a condition known as "color-blindness." In all other respects his vision seems to have been perfect. He was 27 years old and had never worn glasses, nor had the doctors recommended them. The colors he could not distinguish were red and green. He had no trouble distinguishing white and blue, and had some trouble in distinguishing yellow. He had no trouble in reading print or seeing ordinary objects. To hold that "color-blindness" is equivalent to "complete and permanent loss of sight of both eyes" is to state a contradiction in terms. The contract was not to indemnify against the loss of the use of the eyes in his employment as a railroad brakeman as the majority opinion practically holds. It seems to be a distortion of its language to so hold. To insure a person's ability to permanently continue in his particular vocation would, in a policy, require words to that effect. In the policy under consideration there is none.

The opinion is unjust to the membership. The judgment affirmed diverts from a trust fund, created by the contributions of members as indemnity for the "complete and permanent loss of sight of both eyes" and for other purposes of indemnity, the sum of $1,740. We cannot conceive that any body of men, providing for insurance,

whether they all belong to one occupation or not, or whatever the occupation, would place a man who had merely become color-blind on the same indemnity footing with the family of the brother who had been killed, or with the brother totally disabled through loss of legs or arms, or total blindness. Loss of his job by a young trainman, because of color-blindness, might be the incident that led to his financial fortune, taking him from a job that paid from $75 to $150 and putting him into an occupation that paid several times that. Certainly color-blindness bears no resemblance to total disability. Presumptively insurance aims at indemnification—compensation according to actual loss.

The cases cited in the opinion go only to the length of holding that, when a policy provides for the "loss" of an organ, liability arises when there is an entire loss of the use of the organ for all practical purposes.