## BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN v. WILLIAMS. * (No. 8888.)

(Court of Civil Appeals of Texas. Galveston. Jan. 27, 1927.)

1. **Insurance** &#9758;787—**That insured's sight was so diminished as to incapacitate carrying on occupation did not permit recovery under certificate covering only permanent blindness where no projection occurs.**

In action by locomotive engineer against brotherhood on beneficiary's certificate covering total and permanent blindness, no recovery could be had merely on showing that blindness was such as to incapacitate insured from pursuing any gainful occupation requiring use of eyesight, where Constitution, which was expressly made part of certificate, defined practical and permanent blindness as blindness where no projection occurs, even though light perception remains.

2. **Insurance** &#9758;787 — **Where certificate and brotherhood's constitution allowed recovery for blindness only where permanent preventing projection, parts of constitution showing purpose of brotherhood will not be considered in construing right of member to recover for blindness.**

No recovery could be had by engineer against brotherhood under beneficiary certificate for blindness incapacitating him from gainful work, where blindness was not such as to prevent projection within terms of certificate and constitution, though preamble to brotherhood's constitution and subdivisions thereof indicated intention to provide relief for disabled members, in view of clear intention of contracting parties with respect to degree of blindness required to sustain recovery; court not being authorized to accept outside evidence to aid in construing contract.

3. **Insurance** &#9758;787—**Recovery under brotherhood's beneficiary certificate could be had only for specified ailments insured against.**

Where brotherhood's constitution, which was made part of insurance contract, specifically enumerated injuries and ailments for which

recovery could be had, court could not add to contract to include other ailments, though general intent of brotherhood as shown by constitution was to protect members against disability.

**4. Contracts ⚖➡143—Court will not make contracts for parties.**

As parties are bound by their contracts, courts are without authority to make contracts for them, to which parties did not agree.

**5. Contracts ⚖➡152—Written contract clearly expressed must be enforced according to generally accepted meaning.**

Where parties have agreed upon terms of contract and reduced them to writing in language clearly importing their intention, court must give to language used its generally accepted meaning.

**6. Insurance ⚖➡819(4)—Evidence held insufficient to show blindness of locomotive engineer was such that full amount of beneficiary certificate was payable.**

In action by locomotive engineer against brotherhood on beneficiary's certificate for blindness, evidence *held* insufficient to sustain finding that member was totally and permanently blind to such extent that no projection occurred, even though light perception remained within meaning of certificate authorizing payment of full amount of certificate.

Appeal from District Court, Harris County ; Chas. E. Ashe, Judge.

Action by J. L. Williams against the Brotherhood of Locomotive Firemen and Enginemen. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Cole, Cole & O'Connor, of Houston (Robt. L. Cole, of Houston, of counsel), for appellant.

Chas. Murphy, Maurice Hirsch, Ben J. Brown, and Allen B. Hannay, all of Houston, for appellee.

LANE, J. On the 1st day of January, 1907, J. L. Williams was, as he had been since 1890, a locomotive engineer on the Gulf, Colorado & Santa Fé Railway, and on said January 1, 1907, he was a member of the Brotherhood of Locomotive Firemen and Enginemen, hereinafter, for convenience, referred to as the brotherhood, and on the date last mentioned the brotherhood, a fraternal beneficiary system, operating on the lodge system, with ritualistic form of work, sustained by an assessment system, issued to J. L. Williams a beneficiary certificate in the sum of $3,000. Such certificate, among other things not necessary to be here mentioned, provides that, should the holder thereof become totally and permanently blind in one or both eyes, for which payment is provided in the constitution of the brotherhood in force and effect at the time liability against the brotherhood should arise from such blindness, he shall be entitled to participate in the beneficiary fund of the brotherhood to the extent of $3,000. It is provided in the constitution of the brotherhood that a beneficiary member in good standing upon the books of the Grand Lodge, who shall become totally and permanently blind in one or both eyes, shall be entitled to the full amount of his beneficiary certificate. The clause of the constitution mentioned is followed by the following clause:

"Blindness referred to in the foregoing section is interpreted to mean practical and permanent blindness; i. e. where no projection occurs even though light perception remains."

The certificate contains the further provision as follows:

"This certificate is based upon the express conditions that the constitution of the said brotherhood may be altered or amended at any time hereafter, that the member shall keep himself in good standing in the said brotherhood, pay his dues and assessments, and perform all of the other duties of membership which may be required by the constitution of the said brotherhood, and that the constitution now in force, or as may hereafter be altered or amended, is and shall be a part of this contract in the same manner and to the same extent as if said constitution, or alterations or amendments thereto were written herein."

And further that:

"The acceptance of this certificate by the aforesaid member shall constitute an acknowledgment upon the part of said member that he agrees to each and every condition named herein."

On the 12th day of June, 1921, while J. L. Williams was a member in good standing upon the books of the Grand Lodge, and while a holder of the certificate hereinbefore mentioned, he suffered an injury by being struck on his head while in performance of his duties as a locomotive engineer.

On the 22d day of July, 1925, J. L. Williams filed his first amended petition upon which he went to trial, praying for a recovery of $3,000 against the brotherhood upon his certificate. The date of filing of the original petition is not shown.

By the suit, Williams is seeking to recover alone upon his allegation that by reason of his injury he became "totally and permanently blind in both eyes," as such term is used in the constitution of the brotherhood.

The defendant brotherhood denied generally the allegations of the plaintiff. It admitted the issuance of the certificate, as alleged by the plaintiff, and pleaded the provisions of its constitution applicable to the certificate, which we have already set out in the foregoing statement. Following such admission, it denied that plaintiff is totally and permanently blind in either one or both of his eyes. The defendant made further denials as follows:

---

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"This defendant specially denies that it insured plaintiff against becoming totally and permanently disabled from the performance of all manual labor, particularly with reference to the running of an engine or the performance of any other so-called railroad work; that the extent of defendant's insurance of plaintiff was as set out in paragraph 12A (1) against total and permanent blindness under the interpretation as set out under paragraph VI hereinbefore; and defendant denies that the plaintiff has suffered total and permanent blindness within the purview of said provision of its constitution and interpretation thereof, and alleges that, if the plaintiff desired vocational insurance, insuring him against the hazard of the loss of ability to pursue his vocation, he could have obtained same by complying with article 9 and the different sections and provisions thereof, providing for defendant's accident indemnity department."

The case was submitted to a jury. The court charged the jury that, if they believed from the evidence that plaintiff suffered an impairment of his eyesight, and if they believed from the evidence that such impairment of his eyesight affected his power of projection, and if they believed from the evidence that on or about April 2, 1923, plaintiff's power of projection was so lessened as to permanently and totally incapacitate him from pursuing any useful or gainful occupation which requires the use of eyesight, they should answer the question to be propounded in the affirmative.

The one special issue submitted, which was answered in the affirmative, is as follows:

"Do you believe from the evidence that plaintiff, J. L. Williams, on or before April 2, 1923, suffered such an impairment of his eyesight as to permanently render him capable of no projection?"

Upon the answer of the jury the court rendered judgment for the plaintiff for $3,000. The brotherhood has appealed.

[1] By its first and second assignments, appellant substantially insists that the court erred in refusing its motion to instruct a verdict in its favor at the conclusion of all the evidence, in that appellee Williams, by his testimony, admitted that he was neither "totally and permanently blind" nor "practically and permanently blind" in either one or both of his eyes, as those terms were interpreted by the parties when they were inserted into and made a part of their written contract upon which this suit is based, and that there was no evidence tending to disprove such admission.

In the preamble to the constitution of the brotherhood, it is stated as follows:

"Realizing the fact that our vocation involves ceaseless peril, and that it is a duty we owe to ourselves, our families, and those we feel obligated to aid, to make suitable provision against those disasters which almost daily overtake us on the rail, the necessity of protecting our interest, of extending to each other hand of charity, and being sober, industrious, and honorable men, becomes self-evident, and hence the brotherhood has adopted as its cardinal principles, the motto: 'Protection, charity, sobriety, and industry.'"

By subdivisions (a) and (b) of section 1 of article 8, p. 52, of the constitution, it is provided as follows:

"Section 1 (a) The Grand Lodge shall establish and maintain a department to be known as the beneficiary department of the Brotherhood of Locomotive Firemen and Enginemen.

"(b) All members who are eligible shall be required to participate in the beneficiary department, for the purpose of providing substantial relief for members who may become totally and permanently disabled or incapacitated to perform any manual labor from any of the causes set forth in the constitution and not otherwise."

[2] Appellee contends that, in view of the recital in the preamble above quoted, and the provisions of article 8 of the constitution, which we have quoted, it is evident that the certificate issued to appellee upon which he sues constitutes "vocational insurance," and that such quoted matter should have been, and was, by the court considered evidence tending to show that it was the intention of the parties to the contract to provide thereby that, in the event appellee suffered an impairment of his eyesight, and such impairment affected his power of projection, and that by such impairment appellee's power of projection was so lessened as to permanently and totally incapacitate him from pursuing his vocation as a locomotive engineer, appellee should be entitled to the full amount of his beneficiary certificate, notwithstanding the clause of the constitution made a part of the contract, which reads as follows:

"Blindness referred to in the foregoing section (which section is section 1 of article 8) is interpreted to mean practical and permanent blindness; i. e., where no projection occurs, even though light perception remains."

That the court, in construing the contract, was not required to look alone to the language used by the parties in making the same, though unambiguous; that it was not required to strictly construe the language employed by the parties to the contract in construing their intention, but might look to evidence other than the language used by the parties to ascertain their intention.

We cannot agree with the contention of appellee, but, to the contrary, we have reached the conclusion that the contention of appellant should be sustained.

As before shown, subdivision (a) of section 12, art. 8, of the constitution of the brotherhood, made a part of the contract between the parties, provides for recovery on the contract if the member becomes "totally and permanently" blind in one or both eyes, and by another subdivision of the same section, which is also made a part of the contract, the term

"blindness" as used in subdivision (a) is referred to as meaning "practical and permanent blindness," and it then further declares that the term "practical and permanent blindness" as used, should be construed as meaning blindness which renders one incapable of projection, even though light perception remains. The words used in defining the meaning of the term "total and permanent blindness" and "practical and permanent blindness," which are used as synonymous terms, were the words chosen by the contracting parties, which clearly import the intention of the contracting parties, and under such circumstances the court is not authorized to accept outside evidence to aid in construing the contract.

[3] It is clear, we think, that the brotherhood insured appellee against, and only against, one or more of the physical injuries or bodily ailments for which payment is provided in its constitution, such injuries and ailments being specifically enumerated in the constitution, made a part of the insurance contract, and not otherwise, as (1) "total and permanent blindness" (that is, where no projection occurs); (2) Bright's disease of the kidneys; (3) uncompensated valvular disease of heart; (4) progressive and pernicious anemia, which permanently incapacitates one from performing all manual labor; and (5) in the event one should become 70 years of age while a member of said brotherhood.

A member might become disabled by reason of consumption, pneumonia, cancer, or any other or number of bodily ailments, or the loss of members of the body other than the eyes, but, to entitle him to recover under his certificate, it must be one of those things enumerated in the constitution. We quote from the following authorities:

1 Joyce on Insurance (2d Ed.) § 219, p. 573:

"If the terms of the contract are expressed, the court cannot extend to enlarge the contract by implication so as to embrace an object distinct from that originally contemplated. In insurance contracts the insurer undertakes to guarantee the insured against loss or damages upon the exact terms and conditions in the agreement, and upon no other, and therefore courts cannot change the contract nor make a new one for the parties. It is their duty to enforce and carry out the one already made, and nothing ought to be imported into the contract by construction contrary to its express terms."

32 Corpus Juris, § 267, p. 1158:

"The court will not pervert or do violence to the language or expand it beyond its plain ordinary meaning, or add something to the contract which the parties have not put there, in order to create an ambiguity and thereby render the rule applicable."

The rule announced by Joyce on Insurance and that announced in 32 Corpus Juris, above quoted, is sustained by numerous authorities. Brown v. Ins. Co., 89 Tex. 594, 35 S. W. 1060;

Continental Casualty Co. v. Wade, 101 Tex. 102, 105 S. W. 35; Fane v. Brotherhood of Railroad Trainmen, 102 Neb. 645, 168 N. W. 598, L. R. A. 1918F, 1037; Holcomb v. Grand Lodge Brotherhood of Railway Trainmen, 171 Ky. 843, 188 S. W. 885, L. R. A. 1917B, 107; Kelly v. Brotherhood of Railroad Trainmen, 308 Ill. 508, 140 N. E. 5, 29 A. L. R. 243; Routt v. Brotherhood of Railway Trainmen, 101 Neb. 763, 165 N. W. 141; Fuller v. Locomotive Engineers, etc., Association, 122 Mich. 548, 81 N. W. 326, 48 L. R. A. 86, 80 Am. St. Rep. 598.

In the syllabus of the Holcomb Case, supra, the effect of the holdings in the cases cited is thus stated:

"A policy issued by a fraternal insurer provided that the full amount of the benefits should be payable upon insured becoming permanently or totally disabled within the meaning of the constitution. The constitution declared that, should any member in good standing suffer amputation or severance of an entire hand or foot or the complete and permanent loss of both eyes, he should be considered totally and permanently disabled. Only railroad trainmen were eligible to join the order. Insured lost one eye by reason of a cinder, and the sight of the other eye was affected so that he could not continue his occupation of flagman, though he could see sufficiently to recognize people 30 or 40 feet away. Held that, as the constitution was plain, and as there were no provisions that the term 'total disability' should mean total disability from following railroad work, insured was not entitled to recover the benefit."

[4, 5] No rule more harmful to the jurisprudence of this state could be established than one which would allow a resort to outside evidence to alter the effect of a written contract, where the language used by the parties thereto clearly imports the intention of such parties. It is an old and well-established rule, as shown by the authorities cited, that, as parties bind themselves they must be bound, and the courts are without authority to make contracts for them which they did not make for themselves. Parties may agree upon the terms of their contracts and reduce them to writing, and, when they do so agree in language clearly importing their intention, the courts when called upon to enforce such contracts must give to the language used its generally accepted meaning.

[6] This brings us to a consideration of the contention of appellant that there was no evidence to support a finding that appellee was "totally and permanently blind" or "practically and permanently blind," as those terms are interpreted by appellant and appellee in the contract involved in this suit; that is, Is there any evidence to support a finding that appellee was so blinded as to have no projection?

We do not think there was any such evidence, but to the contrary we find that appellee was not blind; that he could go to and about the city of Houston alone, and, while he could not distinguish the color of signal

lights, he would observe them by watching (seeing) the movements of others as they crossed the streets; that he had gone to the railway depot or yards alone to take a trip on an engine, and had looked up and found unassisted the engine on which he wanted to ride; that he could at a short distance recognize persons with whom he was acquainted; that he could read the headlines of the newspapers, and with glasses he could read some of the paper; that he went sometimes to picture shows to keep cool; and that while there he could distinguish male actors from the females, but stated with reference thereto that he could not see them plainly.

The undisputed evidence shows that on the 1st day of January, 1923, appellee signed an identification card for the Houston Land & Trust Company, a banking company, with which he thereafter did his banking business, and that such signature was in a plain, legible hand; that from the 3d day of March, 1924, to the 27th day of June, 1925, which latter date was only a few days before the trial of this case, appellee drew 26 checks on the bank; that he signed all of such checks in a plain, legible hand, and, in addition to such evidence already recited, there was much other undisputed evidence showing that appellee had projection.

Indeed, appellee as well as his counsel admit that he was not so blinded as to have no projection, but all they do contend for is that his eyesight was so impaired as to incapacitate him from pursuing his avocation of railroad engineer, or some other railroad labor.

Having reached the conclusion that there was no evidence to support the judgment, and it appearing that the case was fully developed, it becomes our duty to reverse the judgment and to here render judgment for appellant, and it is accordingly so ordered.

Reversed and rendered.